(42 Misc. Rep. 238.)

GREEN ISLAND ICE CO. v. NORTON.

(Supreme Court, Special Term, Albany County.   December, 1903.)

1. STATE CANAL—PROPERTY IN ICE.
    Ice formed in a state canal basin, constructed upon and entirely surrounded by state land, belongs to the state.

2. SAME—EXCLUSIVE RIGHTS.
    Where the superintendent of public works, under Laws 1894, c. 338, § 23, subd. 13, authorizing him, in his discretion, to permit persons in the vicinity of the canal to cut and haul away ice for domestic use, gives a corporation permission to cut ice for the season on a designated part of a state canal basin, the corporation has an exclusive right to cut the same, as against an adjoining owner of land or a first appropriator of the ice.

3. SAME—INJUNCTION.
    Where a licensee had obtained from the state a right to cut ice on a state canal basin, and an adjoining owner interfered with such right, and the parties had had litigation in regard to it in a former season, and violence had resulted, requiring the intervention of the sheriff, such adjoining owner would be temporarily restrained.

Action by the Green Island Ice Company against Daniel Norton to enjoin interference with certain land. Judgment for plaintiff.

The "Mohawk Basin," so-called, is a part of the Erie and Champlain canal system of this state. It was formerly one of the branches or sprouts of the

Mohawk river, emptying into the Hudson, and it was many years ago appropriated by the authorities of the state as a canal basin. On each side of said basin there is a strip of land owned by the state, known as the "Blue Line," about 10 feet wide. For a number of years it has been customary for the plaintiff and others to take ice from such basin under permits issued by the canal authorities, and from which the state has received about the sum of $2,500 annually. The harvesting of this ice has grown to be an industry of large proportions, many thousands of dollars being invested in icehouses. The plaintiff has an icehouse erected upon property in the vicinity of the basin, as have several other parties. The defendant is the lessee or owner of property adjoining the Blue Line on both sides of said basin. The plaintiff alleges that it and its predecessors have continuously cultivated the ice field now in controversy, so that the same would be valuable as an ice field, and have remained in undisputed possession thereof for upward of 25 years. Such occupation appears to have been under permits from the canal authorities, by which said field was allotted and apportioned to the plaintiff or its predecessors. In the year 1901 the defendant made an application to the superintendent of public works for permission to cut ice in said basin, but other applicants, who had permits in former years and sought renewals thereof, protested against a permit being granted to the defendant, and a hearing was had before the superintendent by the different parties to such controversy. and the superintendent of public works decided to allot the ice field in said basin in the following proportions: Green Island Ice Company, 42 per cent.; Henry Harp, 21 per cent.; Lang & McDonald, 20 per cent.; Daniel Norton, Jr., 17 per cent.—and to issue permits therefor in such proportions. Since such allotment among the several parties so made in the year 1901, the defendant has apparently made no effort to obtain from the state authorities a permit to harvest ice, but has relied upon his claim as first appropriator thereof, and his claim of right as an adjacent and adjoining proprietor, and in the year 1902 he commenced an action against the plaintiff in this action, in which he asked "that he be perpetually enjoined from interfering with or preventing this plaintiff from cutting and harvesting ice from the bed of the said Mohawk river adjacent to and opposite the lands occupied by the said plaintiff." Upon his complaint and affidavit an order to show cause was granted by the county judge of Rensselaer county, why such injunction should not be granted, and enjoining him from so cutting and interfering with said ice until the hearing of such order to show cause. An application was thereafter made to the county judge, who directed that the injunction so granted by him in the order to show cause be in all things vacated and set aside. It does not appear upon this application what became of that action—whether it has been discontinued or whether it is still pending. The plaintiff has obtained a permit for this season from the superintendent of public works to harvest ice upon a certain designated area of said basin, about $10^8/_{10}$ acres in extent, and being, as is alleged, the same field heretofore occupied by it, for which it is to pay to the state the sum of $25 per acre. Plaintiff alleges that it has prepared the ice field by keeping the water and basin free from weeds and grass during the open season, and by cleaning the ice after it was formed, and is about to haul away the ice for domestic use. The defendant has obtained no such permit to harvest ice upon the basin, but claims that he has that right as an adjoining proprietor of land, and claims that he is in fact the first appropriator of the ice within the field described in the permit issued to the plaintiff. He has attempted to exercise his rights by force, and the plaintiff has resisted by force, the result being that the sheriff of the county has had to interfere to preserve the peace.

Frank H. Deal, for plaintiff.
Thomas F. Powers, for defendant.

HERRICK, J. The defendant objects to the granting of an injunction in this case because, as he alleges, the plaintiff has an adequate remedy at law; that is, that if the plaintiff is entitled to harvest the field of ice in controversy here, he can obtain compensation in damages

from the defendant for any injury that is done to such ice field, or interference with his rights therein by the defendant.

The remedy by injunction is one that is constantly growing and expanding, and they are now granted in cases where formerly the courts would not have thought for a moment of so doing. From time immemorial it has been the rule not to issue an injunction where the party praying for it had an adequate remedy at law; but our ideas of what are adequate remedies are changing, and it is gradually coming to be understood that a system of law which will not prevent the doing of a wrong, but only affords redress after the wrong is committed, is not a complete system, and is inadequate for the present needs of society, and, that where the rights of the parties are clear, the courts should interfere to prevent a violation of such rights—should prevent the doing of the wrong in the beginning, instead of allowing such rights to be violated, such wrongs to be done, and remit the party injured to an action for damages as compensation for such wrongs and injuries, at best an uncertain remedy. Neither will it compel parties, whose rights are clear, to rely upon the peace officers of the state to protect them in their enjoyment, nor compel them to resort to physical force to protect themselves or their property from wrong or injury. There is a preventive as well as a remedial justice.

In the case now under consideration, I think the rights of the parties are perfectly clear. At the last season for harvesting ice the subject was a matter of litigation between the parties. This season the field has been the scene of force and violence, the sheriff of the county having been compelled to interfere to preserve the peace. All these matters combined make it a proper case for the granting of an injunction to prevent unlawful interference with the plaintiff's rights, injury to its property, repeated litigation, and the resort to physical force to protect its rights and property. In the view that I have taken of this controversy, and the rights of the respective parties, the various decisions in this and other states upon the ownership of ice shed very little light upon the questions here involved. In this case neither of the parties to the action has any right to the ice formed in the canal by virtue of being an adjoining proprietor; they have no riparian rights; they cannot reach the waters of the canal except by going over the strip of land, the fee of which belongs to the state; the only rights they have therein are such as belong to any person in the state, except as permission may be given to them by the public authorities. If the ice belongs to the owner of the fee where it is formed, then the ice in question here belongs to the state. "Lands appropriated by the canal authorities for the use of the canals under the statute are held by the state in fee." Heacock v. State, 105 N. Y. 248, 11 N. E. 638; Sweet v. City of Syracuse, 129 N. Y. 316, 334, 27 N. E. 1084.

It seems to me that the control that the state has over the canals and their waters is different from that which it exercises over the navigable waters of the state. The one it exercises by right of sovereignty, and "among other rights which pertain to sovereignty is that of using, regulating, and controlling for special purposes the waters of all navigable rivers or streams, whether fresh or salt, and without regard to the ownership of the soil beneath the water." Smith v. City of

Rochester, 92 N. Y. 463–477, 44 Am. Rep. 393. In the case of its canals, as we have seen, it owns the fee of the land beneath the waters and the strip of land on each side; it owns it as it owns its public buildings; and while that ownership is for the benefit of the people, and one in which the people have an interest, that interest is a collective, not a several, interest—not an interest which permits any one of the people by right of first appropriation to take a portion thereof, and reduce it to private ownership. For a great number of years, however, it has been customary for the canal authorities to grant permission to people to take ice from the canals under restrictions and regulations prescribed by such canal authorities. Under such permits the harvesting of ice has grown to be a great industry, icehouses have been erected at various points along both the Erie and Champlain canals, and hundreds of thousands of dollars have been invested in ice-harvesting plants. Of the authority of the state to grant these permits I have no doubt. By section 23, c. 338, pp. 621, 623, of the Laws of 1894, it is provided that:

"The superintendent of public works shall: (1) Have the general care and superintendence of the canals. * * * (13) Permit in his discretion, any person residing, in the vicinity of any of the canals to cut, gather and haul away, for the domestic use of such person, ice from such canals whenever the same can be done without causing damage to the banks or other structures thereof."

It must be apparent that to permit any and every one to take ice from the canals at his pleasure might result in serious damage to their banks and even to the prisms, and that for the purpose of guarding and protecting the canals the superintendent of public works may exclude any one therefrom, or he may permit any one, under proper regulations, to go upon them. The permission to one, defining the limits within which he may go, is necessarily an exclusion of all others from those limits. So, also, I have no doubt of the right of the state to dispose of the ice formed in its canals. Whatever may be said of the ownership of flowing water, I believe it is almost universally conceded that, when water becomes fixed by freezing, the ice belongs to the owner of the fee of the land over which it is formed. Here, as we have seen, the state is the owner of the fee, not only of the bed of the canal, but of the land on each side. As owner of the ice, it may dispose of it. It is not bound to let it go to waste; neither should it permit a general scramble for its appropriation. In this case the plaintiff has received permission from the superintendent of public works to harvest the field defined in his written permit. The defendant has received no such permit; he has no right in the basin at all; he has no right to interfere with the plaintiff in the enjoyment of the privilege granted to him by the permit, and for which he has paid the public authorities.

Let an injunction issue as asked for. Injunction issued.