NIAGARA GORGE RAILROAD COMPANY, Plaintiff, *v.* EDSON U. GAISER, Defendant.

(Supreme Court, Niagara Special Term, October, 1919.)

Public service commission — jurisdiction of — who is deemed a "common carrier" — street railways — franchises — when stage line must obtain a certificate of public convenience and necessity — Transportation Corporations Law, §§ 25, 26.

Injunctions — when permanent injunction granted — pleading — villages — street railways — Transportation Corporations Law, §§ 25, 26 — Public Service Commissions Law, § 53.

The effect of the statute (Laws of 1919, chap. 307) amending section 26 of the Transportation Corporations Law, was to restore to a great extent the jurisdiction of the public service commission granted by section 25 thereof as it was enacted in 1913, of which the commission had been deprived by chapter 669 of the Laws of 1915, which had subjected the suburban railways of the state to much competition resulting in practical bankruptcy.

By section 25 of the Transportation Corporations Law one who operates a bus line over a route partly in a city is deemed a "common carrier" within the Public Service Commissions Law, and since the amendment of 1919 to section 26 of the Transportation Corporations Law, he must obtain a certificate "for the operation of the route or vehicles proposed to be

operated " and must also under section 53 of the Public Service Commissions Law obtain a certificate of public convenience and necessity before exercising a franchise granted by a municipality.

A temporary injunction granted in an action to restrict the operation by defendant of a bus line through the village of Lewiston, Niagara county, as part of a route paralleling plaintiff's railway from a certain point in Main street in the city of Niagara Falls to said village, was modified so as to restrict the operation of defendant to the dock of a certain steamship company while permitting him to run his bus line through the village terminating at Youngstown. Defendant had operated a portion of his route from Main street to the northerly bounds of the city of Niagara Falls under a certificate of public convenience and necessity granted by the public service commission. The board of trustees of the village of Lewiston adopted a resolution providing that section 26 of the Transportation Corporations Law, as amended by chapter 307 of the Laws of 1919, should thereafter apply to said village, and thereafter the consent of the local authorities of the village was granted to defendant upon terms and conditions therein set forth over a route specifically described therein. It was admitted that defendant has failed and neglected to apply for or obtain the certificate of public convenience and necessity under section 53 of the Public Service Commissions Law for the operation of said bus line over said route and that the bus line results in damage and injury to plaintiff for which it has no adequate remedy at law. *Held,* that defendant's demurrer to the complaint will be overruled and the plaintiff granted judgment on the pleadings for a permanent injunction as prayed for.

ACTION for an injunction.

George C. Riley, for plaintiff.

Tuttle, Rice & Stockwell (Alfred W. Gray, of counsel), for defendant.

MARCUS, J.   This action was commenced July 26, 1919, to restrict the operation by the defendant of a bus line through the village of Lewiston, Niagara

county, as a part of a route paralleling plaintiff's railroad from 125 Main street in the city of Niagara Falls to the village of Lewiston.

An order to show cause for a temporary injunction enjoining the operation of a bus line through the village of Lewiston was granted by Mr. Justice Taylor (*ex parte*) and was subsequently modified by him so as to restrict the operations of the defendant to the dock of the Canadian Steamship Company, but to permit the bus line to run straight through the village on its route, terminating at Youngstown. The order to show cause why the injunction should not be continued *pendente lite* was argued before Mr. Justice Laing and resulted in a continuance of the modified temporary injunction until final judgment in this action.

It was conceded by counsel on the argument that the complaint correctly alleges all of the essential facts relevant to the situation, and to constitute a cause of action based on the failure of the defendant to apply for and obtain a certificate of convenience and necessity from the public service commission, but it is contended that no legal requirement exists for such a certificate obtained by the defendant.

For the purposes of the argument, the following facts stand admitted:

(1) That plaintiff is a common carrier operating seven miles of double-track railroad by electric motor power, extending from the city of Niagara Falls into the village of Lewiston;

(2) That plaintiff has obtained the consent of the authorities for such operation, as required by law;

(3) That plaintiff operates under a lease an electric railroad extending from within the village of Lewiston to and through the village of Youngstown and terminating at Fort Niagara;

(4) That the defendant operates a bus line, the route of which is for the most part parallel with plaintiff's railroad and its leased lines;

(5) That defendant is a common carrier and competes with the plaintiff in the carriage of passengers between said points;

(6) That defendant on the 6th of June, 1918, applied for and obtained from the public service commission, second district, a certificate of public convenience and necessity as to a portion of his route from 125 Main street, Niagara Falls, to the northerly boundary line of said city, and has since operated thereunder;

(7) That the board of trustees of the village of Lewiston, in June, 1919, adopted a resolution providing that the provisions of section 26 of the Transportation Corporations Law, as amended by chapter 307 of the Laws of 1919 (effective May 3, 1919), should thereafter apply to such village;

(8) That thereafter defendant petitioned the local authorities of said village for their consent to the operation of his bus line, and on July 24, 1919, said consent was granted upon terms, requirements and conditions therein set forth, and over a route specifically described;

(9) That defendant has failed and neglected to apply for or obtain a certificate of public convenience and necessity for the operation of said bus line over said route;

(10) That such bus line operations result in damage and injury to the plaintiff, for which the plaintiff has no adequate remedy at law.

Section 25 of the Transportation Corporations Law reads as follows: " Any person  *  *  *  who owns or operates a  *  *  *  bus line  *  *  *  or route or vehicles described in the next succeeding section of

this act wholly or partly upon and along any street * * * in any city shall be deemed to be included within the meaning of the term ' common carrier ' as used in the public service commissions law, and shall be required to obtain a certificate of convenience and necessity for the operation of the route or vehicles proposed to be operated * * *.''

It will be at once noted that section 25 clearly and unequivocally defines as common carriers within the terms of the Public Service Commissions Law, and requires a certificate of public convenience and necessity for the operation of such bus route or vehicles described in section 26 as are operated " wholly or partly upon and along any street * * * *in any city.*" The defendant is such a person as section 25 describes, for he operates a part of his route along the streets of the city of Niagara Falls. The operation of a route *partly in a city* constitutes him a common carrier, and since the amendment of 1919, requires that he obtain a certificate " for the operation of the route or vehicles proposed to be operated."

Section 24 of the Transportation Corporations Law was added to article IV of said law by chapter 219 of the Laws of 1909, and provided that any person owning or operating a stage route in a city of a million inhabitants should be deemed a common carrier, as the term is used in the Public Service Commissions Law. Section 25 was added by chapter 495 of the Laws of 1913, and its provisions completely answer the suggestion of defendant's learned counsel that the amendment of May 3, 1919, contained any joker clause, and it seems to me conclusive evidence of the legislative intention to require motor bus lines operating in villages or towns to obtain the certificate of public convenience and necessity of the public service commission.

The enactment of 1913 was entitled "Additional persons and corporations subject to the public service commissions law," and included therein those operating along highways known as a state route; and those constructed wholly and partly at the expense of the state, and along highways in any part of a city having a population of 750,000 or under; also that where such a route had been constructed partly at the expense of a railroad, the public service commission might require the applicant for its certificate to contribute a sum equal to five per cent of the sum paid by the railroad or street railway corporation for construction, as a condition for further operating such a bus line.

The section was again amended by chapter 667 of the Laws of 1915 to its present form, and made to provide that any person operating a state route *in any city* should be deemed a common carrier within the meaning of the term as used in the Public Service Commissions Law, and shall be required to obtain the certificate of the Commission. With that amendment of 1915, section 26 entitled "consent required" was added to article IV, and has continued in that form until May 3, 1919, when its provisions applicable only to a city, were extended by chapter 219 to include towns and villages which might adopt resolutions providing that the provisions of the sections should apply thereto; and the significant fact is to be noted that in the amendment of 1919 the words "shall be operated wholly or partly upon or along any street or highway in such town or village, nor receive a certificate of public convenience and necessity" are exactly identical with the words in the first amendment of section 28 applying to cities and the procedure for obtaining authority to operate therein.

The effect of the amendment of 1919 was to restore,

to a considerable extent, the jurisdiction of the public service commission granted in the provisions of section 25 as it was enacted in 1913, of which the commission had been deprived by chapter 669 of the Laws of 1915.

As the section read prior to 1915, the certificate of the commission was necessary for bus lines operated over state routes or state highways outside of the city, and the legislative intent to return this jurisdiction is evident upon a reading of the 1919 amendment.

The amendment of 1915 had subjected the suburban railways of the state to much competition resulting in what is generally known by communities to be practical bankruptcy, and almost universal applications for increases in fares; and undoubtedly in recognition of this situation and of the inequity of permitting competing bus lines to use, without license fee or public service regulation, the highways and streets, for which in many instances the railroad companies had been required, by the terms of their franchise, and under the General Railroad Law, to pave, the law was restored in its general features to that of 1913, and the option was given every village and town to bring itself within the provisions of the amended section requiring local consents and certificates of public convenience and necessity from the public service commission. This review of the legislation disposes of the suggestion of counsel for defendant that anything sinister exists in the amendment of 1919.

It is also pertinent to suggest that in addition to the positive and direct requirement contained in section 25, that "Any person * * * who * * * operates a bus line * * * or route described in the next succeeding section of this act, wholly or partly upon or along any street * * * *in any city* * * *," must obtain the commission's certificate, the provi-

sions of section 26 applicable alone to cities contains, in the same language, the requirement later made applicable to towns and villages, that no bus line shall be operated " nor receive a certificate of public convenience and necessity," until the owner had obtained the consent of the local authorities.

If the legislature did not, by these words, intend to confer jurisdiction upon the public service commission as to the portions of bus lines and routes in towns and villages, then the language of the legislature above quoted must be held to be without any meaning whatever. It was clearly the legislative intention to restore the jurisdiction of the public service commission over bus lines, not only in the places described in section 25, prior to the amendment of 1915, but to extend to the towns and villages of the entire state the local right and option to supervise, regulate and prescribe the terms on which motor bus lines might be operated over their highways, afford the protection which such regulation and control would provide, and incidentally protect the investment of those who were operating existing interurban railway lines from such form of competition as is shown to be adopted by the defendant in this suit. The legislature has clearly recognized the necessity of vesting in the public service commission authority to pass upon the question as to the convenience of and necessity for such competing lines, and the power to supervise and control their operation. Unless defendant has come under the jurisdiction of the public service commission, he may so operate that his competition will make plaintiff's operation impossible because of the financial loss resulting, and thereby the service guaranteed to the public through the supervision of the plaintiff by the public service commission may be destroyed.

I am also of the opinion that defendant became a common carrier under the provisions of the 1919 amendment, and as such under section 53 of the Public Service Commissions Law, was required to obtain a certificate of public convenience and necessity before exercising its franchise granted by the village of Lewiston. Section 26 prior to the 1919 amendment described bus lines carrying passengers " in competition with another common carrier which is required by law to obtain the consent of the local authorities of said city to operate over the streets thereof."

The 1919 amendment provided that any town or village may adopt a resolution " providing that the provisions of this section shall apply to such town or village."

The amendment thus added to the bus line operated in cities, and which by section 25 were made common carriers who must obtain certificates of public convenience and necessity, such bus lines as compete with other common carriers required by law to obtain the consent of local authorities of towns and villages. This made such bus lines, including the defendant, common carriers, and as such were brought within the provision of section 53 of the Public Service Commissions Law, which would require the certificate of convenience and necessity, regardless of the requirements of section 25 of the Transportation Corporations Law, to the same effect.

The Public Service Commissions Law, section 53, provides: " Nor shall any such * * * common carrier exercise any franchise or right under any provision of the railroad law or of any other law * * * without first obtaining the permission and approval of the proper commission."

Defendant's counsel admitted upon the argument that the 1919 amendment made defendant a common

carrier, a perfectly obvious conclusion. As such he was required by the provision of both the Public Service Commissions Law, and section 25 of the Transportation Corporations Law to obtain a certificate of public convenience and necessity. As a matter of fact, the provision of section 25 of the Transportation Corporations Law stating that such a common carrier " shall be required to obtain a certificate of convenience and necessity for the operation of the route or vehicles proposed to be operated, and shall be subject to all the provisions of said law applicable to common carriers " is entirely superfluous, as when by the preceding matter in said section 25, a bus line was made a common carrier within the meaning of that term, as used in the Public Service Commissions Law, then as a natural result, the public service commission acquired jurisdiction, and the requirement of section 53 of the Public Service Commissions Law became operative.

Such very evidently was the understanding of the draftsman of section 26 of the Transportation Corporations Law, which as variously amended, always provided that the bus line should not operate " nor receive a certificate of public convenience and necessity " until the local authorities had granted their consent.

The amendment of 1919 is as effective in adding bus lines operating over routes through towns and villages to the bus lines operating within the city, as if the first sentence of section 26 had been amended by adding thereto after the word " city " the words " towns or villages." The bus lines operating in towns or villages became common carriers within the meaning of the term used in the Public Service Commissions Law, because such bus lines are such

lines as are mentioned in section 25 as "described in the next succeeding section of this act."

The words of the amendment "nor receive a certificate of public convenience and necessity" show clearly the legislative intention that such a certificate should be obtained by the defendant. If that were not the legislative intent, the words are meaningless and ineffective for any purpose, and such a construction of the statute urged by the defendant violates all recognized rules for the interpretation of statutory enactment.

The defendant's demurrer is overruled and judgment on the pleadings ordered, directing that a permanent injunction issue as pleaded for in the complaint, with the costs of the action.

Judgment accordingly.