United Traction Company, Plaintiff, *v.* John Smith, Defendant.

(Supreme Court, Albany Special Term, March, 1921.)

Injunctions — when injunctive relief granted —motor vehicle line — municipal corporations — licenses — statutes — Transportation Corporations Law, §§ 25, 26 — carriers — Penal Law, §§ 29, 1937.

One who operates a motor vehicle line in a city without first obtaining the consent of the municipal authorities and without thereafter procuring from the Public Service Commission a certificate as to the necessity and public convenience of such business, violates sections 25 and 26 of the Transportation Corporations Law.

Where one without a license so obtained operates a motor vehicle line or route over the streets of the city of Albany, Watervliet and Troy or in and along the highways connecting said cities, with vehicles for carrying passengers, in competition with another common carrier, which, as required by statute, has obtained the consent of the local authorities of said city to operate over the streets thereof, such operation without a license, will be restrained by injunction upon the application of the other common carrier.

While the failure to comply with the aforesaid provisions of the Transportation Corporations Law is a misdemeanor under section 29 of the Penal Law, punishable by fine or imprisonment or both under section 1937 thereof, the court will not compel parties whose rights are clear to rely on peace officers to protect them in their enjoyment of such rights, and may grant injunctive relief.

Application for a temporary injunction.

Sanford & Alexander, for plaintiff.

Andrew J. Nellis, for defendant.

Hinman, J. This is an application for a temporary injunction restraining the defendant and those representing him until the further order of the court

from operating a bus line, stage route or motor vehicle line or route in or along any of the streets, highways or public places of the cities of Albany, Watervliet and Troy, or in and along the highways connecting the said cities.

It appears from the moving papers that on March 23, 1921, the defendant drove a six passenger motor vehicle from near the post-office in Albany on the public street called Broadway, along said street to and along the public highway called the Albany and Troy road through the public streets of Watervliet, to and along a public street called River street in the city of Troy; that passengers got on and off at various points on said trip and each paid to the defendant the sum of twenty-five cents; that the defendant solicited passengers for hire on and along said route; that the vehicle had a sign bearing the words, "Albany and Troy.  25c;" that the defendant told one of the passengers in his motor vehicle on that date that he was the owner of the car and that he had been running it as a motor vehicle line for twenty-eight days from the post-office in Albany to the Manufacturers National Bank on River street in Troy, and that he intended to so run it until the trolley strike was over and that he had no license or consent by the local authorities of said cities to operate said route.

The defendant substantially concedes these facts, except that he denies saying that he was running his vehicle as a motor vehicle line, or that he was running any line whatever.  This becomes immaterial, however, in view of the facts admitted, since the court must reach the conclusion under the statutes and under the decisions, that the operation of his vehicle did constitute the operation of a motor vehicle line or route, and constituted him a common carrier within the meaning of the statutes, requiring him to

obtain a license as will be indicated by the authorities hereinafter referred to.

The following sections of the Transportation Corporations Law are applicable to this case:

" § 25. Additional persons and corporations subject to the public service commissions law.— Any person or any corporation who or which owns or operates a stage route, bus line or motor vehicle line or route or vehicles described in the next succeeding section of this act wholly or partly upon and along any street, avenue or public place in any city shall be deemed to be included within the meaning of the term ' common carrier ' as used in the public service commissions law, and shall be required to obtain a certificate of convenience and necessity for the operation of the route or vehicles proposed to be operated, and shall be subject to all the provisions of the said law applicable to common carriers."

" § 26. Consent required.— No bus line, stage route nor motor vehicle line or route, nor any vehicle in connection therewith, nor any vehicles carrying passengers at a rate of fare of fifteen cents or less for each passenger within the limits of a city or in competition with another common carrier which is required by law to obtain the consent of the local authorities of said city to operate over the streets thereof shall be operated wholly or partly upon or along any street, avenue or public place in any city, nor receive a certificate of public convenience and necessity until the owner or owners thereof shall have procured, after public notice and a hearing, the consent of the local authorities of said city, as defined by the railroad law, to such operation, upon such terms and conditions as said local authorities may prescribe, which may include provisions covering description of route, rate of speed, compensation for wear and tear of

pavement, improvements and bridges, safeguarding passengers and other persons using such streets, and no such operation upon the streets of any such city shall be permitted until the owner or operator of such vehicles or proposed line or route shall if required by such local authorities have executed and delivered a bond to such city in an amount fixed by said local authorities and in the form prescribed by the chief law officer of said city with sureties satisfactory to the chief fiscal officer of said city, which bond may be required to provide adequate security for the prompt payment of any sum accruing to said city, and the performance of any other obligations, under the terms and conditions of such consent, as well as adequate security for the payment by such owner of any damages occurring to, or judgments recoverable by, any person on account of the operation of such line or route, or any fault in respect thereto. The town board of any town or the board of trustees of any village may adopt a resolution providing that the provisions of this section shall apply to such town or village, and thereafter no bus line, stage route, motor vehicle line or route shall be operated, wholly or partly, upon or along any street or highway in such town or village, nor receive a certificate of public convenience and necessity until the owner or owners thereof shall have procured the consent of the local authorities of such town or village, in the same manner and subject to the same terms and conditions as is provided in this section for procuring the consent of the local authorities of the city; and for such purpose the town board of such town, in the case of a town and the board of trustees of the village in the case of a village, shall be deemed the local authorities thereof.''

One who operates a motor vehicle line within a city

without first obtaining the consent of the municipal authorities and without thereafter procuring a certificate from the public service commission as to the necessity and public convenience of such business, violates the above statute.

In the case of *Public Service Commission* v. *Hurtgan,* 91 Misc. Rep. 432 at page 435, Mr. Justice Brown graphically outlines the cases in which a license must be obtained. He states that the statute requires such consent for the operation in a city of either

"(a) A bus line,

"(b) A stage route,

"(c) A motor vehicle line or route,

"(d) A vehicle in connection with a bus line, a stage route, a motor vehicle line or route,

"(e) A vehicle carrying passengers at a rate of fare of fifteen cents or less for each passenger within the limits of a city,

"(f) A vehicle carrying passengers in competition with another common carrier which is required by law to obtain the consent of the local authorities of said city to operate over the streets thereof.

" The statute is that to lawfully operate any one of the above six specified lines, routes or vehicles, in a city the consent of the local authorities and the certificate of the Public Service Commission must be first obtained, provided such line, route or vehicles, are engaged in the business of carrying passengers for hire in the city."

The defendant seems to come under subdivisions (c) and (f) in the above analysis, since he was operating a motor vehicle line or route and was operating a vehicle carrying passengers in competition with another common carrier which is required by law to obtain the consent of the local authorities of the cities in question to operate over the streets thereof.

Supreme Court, March, 1921. [Vol. 115.

This case is not a novel one in courts of this state. I have had a number of similar cases presented to me for my determination, involving a violation of the above statute in which the owner of a vehicle or vehicles operating a motor vehicle line or route, or operating a vehicle carrying passengers in competition with another common carrier has been restrained by me upon the application of the public service commission for the enforcement of this statute. No opinion has heretofore been written by me in any of these cases, for the very reason that the courts had settled the law in a number of clear and harmonious decisions.

The importance of the situation which exists in this community, however, justifies me in referring to a number of these decisions for the purpose of clarifying this situation.

In the case of *Public Service Commission* v. *Hurtgan, supra,* the defendant was operating a motor vehicle route in the city of Lockport without having applied for or having received the consent of the authorities of that city, in competition with the International Railway Company, and the court granted an injunction, restraining the defendant from further operating his motor vehicles and the carrying of passengers for hire within said city.

In the case of *Public Service Commission* v. *Fox,* 96 Misc. Rep. 283, the defendant operated a horse drawn vehicle carrying passengers at a rate of fare of fifteen cents or less, through the streets of Elmira. Regular trips were made. The defendant attempted to justify his operation by showing that his passengers were employees and only the employees of a certain manufacturing plant, and that these employees had formed a mutual transportation club, each paying when he rode a fare of five cents. The

court enjoined the defendant in that case as a violation of the statute for failure to procure the consent of the local authorities, and also the certificate from the public service commission, holding that the requirements of the statute could not be ignored even under such circumstances.

In the case of *Public Service Commission* v. *Mt. Vernon Taxicab Co.*, 101 Misc. Rep. 497, the court enjoined the operation of defendant's auto bus line between the city of Mt. Vernon and Rye Beach, because it was in competition with another common carrier and because it was operating without the consent of the local authorities of the cities of Mt. Vernon and New Rochelle, and that the certificate of public convenience and necessity from the public service commission is required by the statute. In that case the court said: " The operation of the buses carrying about twenty people each on a regular line or route is altogether different than an ordinary taxicab service where vehicles are operated upon no regular route but take patrons anywhere they choose to go."

In the case of *Niagara Gorge R. R. Co.* v. *Gaiser*, 109 Misc. Rep. 38, an action was commenced to restrict the operation by the defendant of a bus line through the village of Lewiston, Niagara county, as a part of a route paralleling the plaintiff's railroad from a certain street in the city of Niagara Falls to the village of Lewiston. It was held that by section 25 of the Transportation Corporations Law, one who operates a bus line over a route in a city is deemed a common carrier within the Public Service Commissions Law and must obtain a certificate for the operation of the route or vehicles proposed to be operated, and must also obtain a certificate of public convenience and necessity from the public service com-

mission before exercising a franchise granted by a municipality. An injunction was granted restraining the defendant from operating his bus line so far as he had failed to obtain a certificate from the public service commission, upon the ground that the operation of the bus line violated the statute and resulted in damage and injury to the railroad company, for which it had no adequate remedy at law. It is to be noted that this action was brought by the railroad company and not by the public service commission.

In the case of *Public Service Commission* v. *Booth,* 170 App. Div. 590, the defendant had been operating a bus line before the statute in question was passed and he claimed that the statute requiring a certificate from the public service commission did not apply to him as he was already operating under a license from the city. The court held that even in that case the defendant was prevented from operating his bus line until he had complied with the terms of the statute by obtaining a certificate of public convenience and necessity from the public service commission.

In the case of *Brooklyn City R. R. Co.* v. *Whalen,* 191 App. Div. 737, the plaintiff, a street railway company, owned and operated lines of surface cars in Brooklyn, and in the fall of 1919 the board of estimate and apportionment of the city of New York authorized the defendant, as commissioner of plant and structures of the city, to operate motor vehicles for the carrying of passengers on certain prescribed routes. The city authorities contended that the maintenance of the bus line was justifiable because of emergency, putting forward the inadequacy of the service of the street railway lines as creating such emergency. The court condemned the procedure adopted, calling attention to the fact that the city had, in plain disregard of the statute, without grant-

ing a franchise, authorized individuals to run auto buses on established routes through the streets for their own profit. The court said, at page 743:

" If the welfare and convenience of the citizens require additional accommodations for transit such as would be furnished by established stage routes, there is a legal way to accomplish the result. The city has power to grant a franchise, subject to the determination of its necessity and convenience. But the city has no power of municipal operation; nor has it the right to authorize others so to use the streets without observing the conditions to a legal and regular grant of a franchise.

" The plaintiff plainly suffers a special injury from the competition of these stage lines and from the added obstruction to the operation of its cars under its franchise. Even if the purpose of establishing the lines is not to injure the plaintiff in the exercise of its legal rights, it has that effect. Moreover, no bus line can be established in streets occupied by the plaintiff unless a certificate of convenience and necessity be secured, and upon an application for such certificate the plaintiff has a right to be heard. * * * A common carrier, therefore, has a legal right to question the necessity and convenience to the people of a paralleling common carrier. * * * The plaintiff, having a franchise to operate in the public streets, and being under financial pressure of the prevailing economic conditions, suddenly finds its most profitable lines paralleled by stages operating under the control of the defendant without authority of law and without having obtained a certificate of public convenience and necessity. I think the plaintiff has a standing in a court of equity for relief.

" Whether the plaintiff has failed in fulfilling the obligations of its franchise has nothing to do with

the question now before us. If it has, the law affords a remedy. The orderly processes of the law are better and probably more effective than an attempt at correction by an unauthorized and illegal administrative act.''

No further citation of authorities is needed to demonstrate that the plaintiff is entitled to the injunction sought herein. It seems desirable, however, in view of the multiplicity of similar instances in which the statute in question is being violated in this community, so openly and continuously that the court may take judicial notice of it, that attention should be called to the fact that failure to comply with such statute is a violation of the Penal Law.

Section 29 of the Penal Law provides as follows:

'' § 29. Violation of statute which imposes no penalty is a misdemeanor. Where the performance of any act is prohibited by a statute, and no penalty for the violation of such statute is imposed in any statute, the doing such act is a misdemeanor.''

Section 1937 of the Penal Law provides as follows:

'' § 1937. Punishment of misdemeanors when not fixed by statute. A person convicted of a crime declared to be a misdemeanor, for which no other punishment is specially prescribed by this chapter, or by any other statutory provision in force at the time of the conviction and sentence, is punishable by imprisonment in a penitentiary, or county jail, for not more than one year, or by a fine of not more than five hundred dollars, or by both.''

In other words an act expressly prohibited by the public statute is in its inception and always must continue to be, unlawful, and where the performance of any act is prohibited by a statute and no penalty for the violation of such statute is imposed in any statute, the doing of such act is a misdemeanor, punishable

by imprisonment for not more than one year, or by a fine of not more than $500, or both. *Keller* v. *Erie R. R. Co.,* 183 N. Y. 67; *Marra* v. *N. Y. C. & H. R. R. R. Co.,* 139 App. Div. 707.

While the regular remedy for the prosecution of those who violate the Penal Laws of the state lies in arrest and punishment, the court will not compel parties whose rights are clear to rely on peace officers to protect them in their enjoyment of those rights. "There is a preventive as well as a remedial justice." *Green Island Ice Co.* v. *Norton,* 42 Misc. Rep. 238; affd., 105 App. Div. 331; 189 N. Y. 529; *City of New York* v. *New Jersey & S. I. Ferry Co.,* 173 App. Div. 496.

Every argument that could be advanced here in favor of permitting the jitneys to run without a license upon the streets of the cities here affected has been conclusively answered by the Appellate Division in the case of *Brooklyn City Railroad Co.* v. *Whalen,* from which I have quoted. There the court said:

"If the welfare and convenience of the citizens require additional accommodations for transit, * * * there is a legal way to accomplish the result."

The city had no right to provide municipal bus lines nor did it have the right to authorize others so to use the streets without observing the conditions of the law requiring the issuance of a license.

"Whether the plaintiff has failed in fulfilling the obligations of its franchise has nothing to do with the question;" that if the railway company had failed in its obligations, the law affords a remedy.

And finally, the court announced what seems to me must be recognized by thoughtful people everywhere as the only safe and sane rule of conduct in these emergencies, when it said that the orderly processes of the law are better and probably more effective than

Surrogate's Court, Bronx County, March, 1921.    [Vol. 115.

an attempt at correction by an unauthorized and illegal act.

I cannot help referring here to what President Thomas Jefferson said in his first inaugural address when he stated that he believed this the strongest government on earth. He said: '' I believe it the only one, where every man, at the call of the law, would fly to the standard of the law and would meet invasions of the public order as his own personal concern.'' He said that we can tolerate error of opinion in this country so long as reason is left free to combat it. If that is the sentiment of every law abiding citizen and of every public officer charged with the duty to preserve order and carry out the orderly processes of the law, as I thoroughly believe it is, the controversy here will be settled in accordance with our best traditions.

The plaintiff is entitled to the injunction sought herein.

Application granted.