INTERNATIONAL RAILWAY COMPANY, Appellant, *v.* FRANK BARONE and Others, Respondents.

Fourth Department, December 23, 1935.

*Ralph K. Robertson* [*Albert M. Kraus* and *John J. Sullivan, Jr.*, of counsel], for the appellant.

*Archibald M. Laidlaw*, for all the respondents except Nelson Kell.

*Stephen L. Perkins* [*Archibald M. Laidlaw* of counsel], for the respondent Nelson Kell.

EDGCOMB, J. Upon this appeal we are called upon to review the propriety of an order of the Special Term denying plaintiff's right to an injunction *pendente lite*.

While the granting or withholding of a temporary injunction rests largely in the judicial discretion of the court of original jurisdiction (*Paul* v. *Munger*, 47 N. Y. 469; *Hatch* v. *Western Union Telegraph Co.*, 93 id. 640; *Jenkins* v. *Marsh*, 225 App. Div. 401; *Witbeck* v. *Niagara, Lockport & Ontario Power Co.*, 214 id. 371, 373), the freedom of such tribunal to act according to its own judgment is subject to review by this court. The Appellate Division is a part of the Supreme Court, and if a right is shown to exist to which recognition has not been properly accorded by the Special Term, it is the duty of this court to correct the error on appeal. (*Campbell* v. *Seaman*, 63 N. Y. 568, 582; *Holton* v. *Board of Supervisors of Monroe County*, 245 App. Div. 144.)

The plaintiff is a transportation corporation, owning and operating a street surface railroad in the city of Buffalo. It has obtained the necessary certificates of public convenience and necessity from the Public Service Commission of the State, and has been granted the requisite franchises by the city. Its property and plant are worth many million dollars, and it pays annually over half a million dollars for taxes, repaving costs and franchise percentage.

The complaint alleges that the defendants are common carriers within the provisions of section 65 of the Transportation Corporations Law, and are operating motor vehicles on the streets of Buffalo, carrying passengers at a rate of fare of fifteen cents or less for each

passenger in competition with the plaintiff, contrary to the mandate of the statute, and that, by reason thereof, the plaintiff has suffered, and will continue to suffer, irretrievable loss and damage to its property, trade and business. Plaintiff brings this action in equity to permanently enjoin the defendants from the further commission of said illegal acts.

Section 65 of the Transportation Corporations Law provides as follows: "Any person or corporation owning or operating a stage, omnibus line or motor vehicle line or route or vehicles described in the next succeeding section of this article wholly or partly upon and along any street, avenue or public place in any city shall be deemed to be a ' common carrier ' as that term is used in the public service commission law, and shall be required to obtain a certificate of convenience and necessity for the operation of the route or vehicles proposed to be operated, and shall be subject to all the provisions of such law applicable to common carriers."

Section 66 of the same act reads as follows: " No stage, omnibus line, stage route, motor vehicle line or route, nor any vehicle in connection therewith, and no vehicle carrying passengers at a rate of fare of fifteen cents or less for each passenger within the limits of a city or in competition with another common carrier which is required by law to obtain the consent of the local authorities of such city to operate over the streets thereof shall be operated wholly or partly upon or along any street, avenue or public place in any city, nor shall a certificate of public convenience and necessity be issued therefor, until the owner or owners thereof shall have procured, after public notice and a hearing, the consent of the local authorities of such city, as defined by the railroad law, to such operation, upon such terms and conditions as said local authorities may prescribe."

Concededly neither the certificate nor the consent called for by the above-quoted sections of the law were ever obtained by any of the defendants.   If such requirement is a prerequisite to the business in which they are engaged, they are violating the statute, and are operating illegally.

This brings us to an examination of the affidavits used upon this motion, in an endeavor to discover whether the facts stated bring the defendants within the provisions of sections 65 and 66 of the Transportation Corporations Law, or whether they are operating a legitimate taxicab business, which concededly is in no way affected by the statute.

Plaintiff's affidavits allege positively that each of the defendants on certain specified occasions has carried passengers within the city of Buffalo, in competition with the plaintiff, for a rate of fare of

less than fifteen cents for each passenger, and that such travelers, or at least some of them, have paid the driver of the vehicle a fare of ten cents. The answering affidavits are very cleverly and deftly drawn. A superficial examination might give a casual reader the impression that the statements in the moving papers are denied. A more careful perusal, however, discloses no denial that the taxi meters on the vehicles were not registering, or that the passengers, which the defendants admit they have carried from designated points to the center of the city, have paid a less fare than fifteen cents. In place of such negation we find this very adroit allegation: " That on such occasions the last passenger to leave the cab has paid deponent the regular taxifare for the trip from the point where said passengers were picked up to a point in some other part of the city." It is rather significant that the affidavit is silent as to the sum paid by the last passenger. For all we know that amount may have been less than fifteen cents. If we give the allegation a strict and literal interpretation, we find no statement that the other passengers did not pay their fare. But if we give the defendants the benefit of the doubt, and adopt the inference which they apparently intended should be drawn, we have a situation where the various passengers alight at different points, and the last person out of the car pays the fare for the entire party. One cannot so willfully or ignorantly deceive himself as to believe that such a procedure is a *bona fide* transaction. The last passenger to leave the car would scarcely be willing to pay the fare of strangers, unless he had first been reimbursed by them. It is altogether too apparent that such a scheme was concocted simply to make the transaction look like a legitimate taxicab trip. Such a subterfuge will not be permitted to enable the respondents to defeat the mandate of the statute.

Some of the defendants say that they never " solicited passengers to ride for ten cents each." They are very careful, however, not to say that they never carried a passenger for ten cents. We find nothing in the statute about " soliciting " trade. The vice is not the " solicitation," but the actual carrying of the passenger.

Defendants also urge that they are not controlled by the statute because their vehicles are not limited to a scheduled route, and that they do not in all instances traverse the same streets as do the plaintiff's street cars. I find no provision in the statute which requires the vehicles therein mentioned to travel on any definite scheduled route. The mere fact that in carrying a passenger from the point of hiring to the point of destination the defendants sometimes take a course other than the one over which plaintiff's cars are operated, does not warrant the conclusion that defendants'

cabs are not operated in competition with the plaintiff. It is the termini of the trip which counts. The route between the two points is immaterial. Viewed in this light, the allegation in the moving papers that defendants' vehicles are operated in competition with plaintiff's street cars is not denied.

Nor can the defendants escape the requirement of the statute by calling their vehicles taxicabs. Call them taxicabs if you will; the name matters little. Designating an object by some particular word does not change its nature, or make it something other than what it truly is. The form of the vehicle used does not control the nature of the enterprise; that is determined by the kind of service performed, and the manner in which it is conducted. The language of the statute is very comprehensive; it refers to " any vehicle " used in connection with a stage, omnibus or " motor vehicle " line, or any " vehicle carrying passengers at a rate of fare of fifteen cents or less for each passenger within the limits of a city or in competition with another common carrier."

From any fair and reasonable interpretation of the answering affidavits, we are forced to the conclusion that the material allegations of plaintiff's moving affidavits stand uncontradicted, and that, on the face of the papers, defendants are operating their cars in violation of the statute.

That being so, is the plaintiff entitled to an interlocutory injunction enjoining the further operation of these competing vehicles until the case can be tried on the merits?

A court of equity has no absolute, inherent power to grant such a restraining order. The authority, if it exists, must be found in the Civil Practice Act. (*Bachman* v. *Harrington*, 184 N. Y. 458.)

Section 877 of the Civil Practice Act gives to the court power to issue an injunction during the pendency of an action, where it appears from the complaint that the plaintiff demands and is entitled to a judgment against the defendant restraining the commission or continuance of an act, the doing of which, during the pendency of the action, would produce injury to the plaintiff.

I think that the plaintiff has brought itself well within the above rule. It appears from the complaint that the plaintiff is entitled to the final relief for which the action is brought; the papers show that the act sought to be restrained is unlawful; it is apparent that the continuation of such acts during the pendency of the litigation will injure the plaintiff. These issues are not controverted by defendants' answering affidavits. The policy of the State frowns upon wasteful competition in public transportation. (*People ex rel. N. Y. C. & H. R. R. R. Co.* v. *Public Service Commission*, 227 N. Y. 248, 256.) These are days of regulation and control of

common carriers. There is no vested right to the free and unrestricted use of the streets of a municipality. No line of transportation can legally be established without first obtaining a certificate of public convenience and necessity from the Public Service Commission. The causes which move that body to grant or withhold such certificate are (1) the convenience of the public; (2) the manner in which other common carriers already serving the territory will be affected by the proposed competition. As was said by Judge STONE in *People's Transit Co.* v. *Henshaw* (20 F. [2d] 87, 89, 90), in speaking of the advantage which accrues to the public from a transportation system which is stable and cannot disappear overnight at the caprice of the owners: " The public welfare does not demand such competition [*i. e.*, from a system which is not permanent] to secure reasonable rates or proper service because all such matters are subject to public regulation and control. * * * No new system has a legal right to destroy such existing system and have the public at its mercy. The public welfare is not served, but harmed thereby."

It is quite true that a court of equity will not step in at the instance of an individual, and enjoin the violation of an act which is prohibited by the statute when the movant has suffered no damage except such as is common to the entire community. The public authorities, acting for the common interest, alone can maintain the action under such circumstances. But where the individual has sustained special damage of a pecuniary nature by reason of the commission of some act which is barred by the law of the land, the jurisdiction of a court of equity arises to protect such right. (*Cranford* v. *Tyrrell*, 128 N. Y. 341.)

It is apparent here that the plaintiff will suffer a special injury of a pecuniary nature from the competition of a motor vehicle line. (*People ex rel. N. Y. C. & H. R. R. R. Co.* v. *Public Service Commission*, 195 N. Y. 157.) Equity may properly intervene, and protect such right by enjoining the defendants from further operation pending the trial and determination of the action. (*Brooklyn City R. R. Co.* v. *Whalen*, 191 App. Div. 737; affd., 229 N. Y. 570; *Fulton Light, Heat & Power Co.* v. *Seneca River Power Co.*, 119 Misc. 729; affd., 206 App. Div. 731, on opinion of CHENEY, J., at Special Term; *Niagara Gorge R. R. Co.* v. *Gaiser*, 109 Misc. 38; *Darling* v. *Darling*, 118 id. 817; *Colonial Motor Coach Corp.* v. *Cayuga Omnibus Corp.*, 137 id. 199; affd., 230 App. Div. 773; *United Traction Co.* v. *Smith*, 115 Misc. 73.)

In *Glover* v. *Malloska* (238 Mich. 216; 213 N. W. 107) a wholesale dealer in gasoline and oils, who had suffered a loss of customers because of the unlawful act of a competitor, was accorded injunctive relief to protect his property rights.

In *Matter of Debs* (158 U. S. 564, 593; 39 L. Ed. 1092, 1105) it was held that where there was an actual or threatened interference with property or rights of a pecuniary nature, a court of equity acquired jurisdiction to interfere, and put an end to the invasion.

The facts in *People ex rel. Weatherwax* v. *Watt* (115 Misc. 120; affd., 197 App. Div. 929) are similar to those in the instant case, except that in the *Watt* case the drivers of the motor vehicles openly solicited passengers. It was held in that case that the drivers were operating their jitneys contrary to the statute, and that a mandamus would issue commanding the defendant, the mayor of the city of Albany, to enforce the laws of the State within the city, and especially the provisions of the Transportation Corporations Law.

There is nothing in *Matter of International Railway Co.* v. *Schwab* (203 App. Div. 68) which conflicts with the decision we are about to make. In that case this court reversed a peremptory mandamus order directing the mayor of Buffalo to enforce " by all lawful means " within his power the provisions of the Transportation Corporations Law relating to motor vehicles carrying passengers for hire, upon the ground that the order did not specifically point out the acts to be done, and because it was an unwarranted interference with the executive power of the mayor. That is an entirely different situation from that which we have in the case now before us.

Neither is *Utica-Clayville Bus Co.* v. *Waite* (233 App. Div. 297) decisive here. In that case the defendant had an arrangement with seven individuals to carry them to and from their work, calling for them each day at their respective homes, and receiving for such service a flat rate of three dollars per week for each individual. This court held that such an arrangement was the usual advanced hiring of a taxicab operator by a private passenger for a definite trip, and did not bring the defendant within the provisions of the Transportation Corporations Law. Here the defendants cruise about the streets, or stand at certain street corners, and accept as passengers any one who presents himself. While certain of the defendants assert that they were solicited by their respective passengers to transport them to their destination, that fact is immaterial in determining the nature of the service. A person entering a street car impliedly requests the company to carry him to his journey's end.

It is very true that in granting or withholding injunctive relief the court will consider the welfare of the public, as well as the injury which will result to either or both parties by its action. There is no crying demand on the part of the public for the service afforded

by the defendants. If this additional service is necessary, the law prescribes a way in which it can legally be obtained. The Legislature has vested the Public Service Commission with exclusive authority to decide that question. The stopping of defendants' operation may bring some inconvenience or loss to them, but we think that the orderly course of procedure laid down by the statute should be followed by them before we place their inconvenience and loss ahead of that of the plaintiff, whose business has concededly been interfered with by the illegal and unwarranted acts of the defendants.

The facts disclosed by the record well warrant the granting of a temporary injunction. The purpose of such a remedy is merely to prevent further perpetration of an alleged wrong until a full and deliberate investigation of the case can be had, without in any manner determining the question of plaintiff's right to permanent injunctive relief, or indicating any opinion upon that subject. We do not know what the facts on the trial will show.

We have, therefore, reached the conclusion that sound judicial discretion, that discretion which the parties have a right to insist shall be exercised with due regard to sound reason and the usage of the courts, demands that the order appealed from be reversed, and that the motion be granted.

All concur. Present — SEARS, P. J., TAYLOR, EDGCOMB, CROSBY and LEWIS, JJ.

Order reversed, with ten dollars costs and disbursements, and motion granted, with ten dollars costs.