(62 App. Div. 348.)

PEOPLE ex rel. PUMPYANSKY v. KEATING, Commissioner of Department of Highways.

(Supreme Court, Appellate Division, First Department.  June 21, 1901.)

1. MUNICIPAL CORPORATIONS—OBSTRUCTION IN STREET—REMOVAL—RIGHTS OF CITIZEN.

The mere fact that plaintiff is a citizen and resident of a city authorizes him to institute a mandamus proceeding to compel the commissioner of highways to remove a booth which is unlawfully maintained on the city streets.

2. SAME—NATURE OF OBSTRUCTION.

The legislature may empower a city to permit a citizen to erect a booth for the sale of newspapers under the stairway to an elevated railway station, which does not obstruct the use of the street except for a space of about one foot at one end thereof, since it is not such an appropriation of the street for private purpose as will constitute a nuisance.

3. SAME—RIGHT OF MUNICIPALITY.

The authorities of a city cannot grant a citizen the right to appropriate a portion of a street for private purposes, though the appropriation does not constitute a nuisance, unless authorized so to do by the legislature.

4. SAME—STATUTE—REPEAL.

The consolidation act, as amended by Laws 1896, c. 718, authorized the common council to regulate the use of sidewalks, and to grant permits for the erection of booths under the stairways to elevated railways. Greater New York Charter, §§ 1608, 1609, provide that the charter only repeals the provisions of the consolidation act when inconsistent therewith, or when the subject-matter thereof is included in or revised by the charter, but that the mere omission of portions of the previous act shall not work a repeal thereof. Section 49, subd. 3, relates to the regulation of public streets and the prevention of obstructions, and prohibits the authorization of any encroachment except for temporary purposes. *Held*, that the charter repealed the provisions of the consolidation act as amended by the act of 1896, which authorized the granting of permission to erect booths under elevated railway steps.

Laughlin and O'Brien, JJ., dissenting.

Appeal from special term.

Mandamus by the people, on the relation of David Pumpyansky, against James P. Keating, as commissioner of department of highways of New York City, to compel the removal of a booth from the street. From an order of the special term denying the application, the relator appeals. Reversed.

Argued before HATCH, McLAUGHLIN, PATTERSON, O'BRIEN, and LAUGHLIN, JJ.

Otto H. Droege, for appellant.
Chase Mellen, for respondent.

HATCH, J.  This is an application for a writ of peremptory mandamus, directed to the defendant, as commissioner of highways of the city of New York, commanding him to remove, or cause to be

removed, from the street or sidewalk of the southerly side of West Twenty-Third street, west of its intersection with the westerly side of Sixth avenue, a stand or booth used and maintained for the purpose of vending newspapers and periodicals. West Twenty-Third street and Sixth avenue are public highways of the city of New York, and under the control of the respondent. At the southwest corner formed by the intersection of said streets there is a stairway leading from the street below to a station of the Manhattan Elevated Railroad at that place, and underneath this stairway there has been erected a stand or booth, used and occupied for the purpose mentioned. This booth was erected by one Dunlop, under a permit issued by the municipal assembly October 4, 1900, authorizing him to erect and maintain the same for the period of one year. It is admitted that the said permit was issued pursuant to the provisions of sections 680 to 683, inclusive, of the Revised Ordinances of the City of New York, under the authority of chapter 718 of the Laws of 1896, which amended subdivision 3 of section 86 of the New York City consolidation act. It is contended by the relator that the act of 1896, above referred to, was repealed by the Greater New York charter, and that, therefore, the municipal assembly had no authority to grant permission for the erection and occupancy of such a structure, and its act in so doing is illegal and void. The controversy presents for determination simply questions of law: (1) Has the relator, merely as a resident and citizen of the city of New York, a right to maintain this proceeding? (2) Has the municipal assembly power and authority to grant such a license as the one in question for the use of the public highways of the city?

It is plain that the relator has standing to maintain this proceeding. The right which the writ seeks to enforce affects the general public, and under such circumstances the enforcement of the right is the concern of every citizen; and no special interest, except that of the general public, need be shown. People v. Collins, 19 Wend. 55; People v. Board of Sup'rs of Sullivan Co., 56 N. Y. 249; Chittenden v. Wurster, 152 N. Y. 345, 46 N. E. 857, 37 L. R. A. 809. The rule is otherwise where the relator seeks to enforce a private right. In such case his special interest must be set out in the petition, and his right to relief must be made clearly to appear. No obstacle stands in the way, therefore, of the maintenance of this proceeding by the relator.

It is a well-settled general proposition of law that no authority exists in the legislature to authorize an encroachment upon a public street, which interferes with its use by the general public, for the benefit of a private person. Encroachments of such a character constitute the same a nuisance, and their existence is without legal authority, whether they be directly authorized by the legislature or indirectly by the delegation of power to municipal bodies. But, like most general rules of law, there are exceptions to this rule, and illustrations of the rule are found in Callanan v. Gilman, 107 N. Y. 361, 14 N. E. 264; People v. Baltimore & O. R. Co., 117 N. Y. 150, 22 N. E. 1026; Palmer v. Electric Co., 158 N. Y. 231, 52 N. E. 1092, 43 L. R. A. 672. Within such limitations, there is no in-

vasion of any constitutional right possessed by the general public. Jorgensen v. Squires, 144 N. Y. 280, 39 N. E. 373. It appears from the present record that the structure which is sought to be removed in the present case is placed upon that part of the street directly underneath the stairway of an elevated railway station, and occupies a space 14 feet and 6 inches in length by about 4 feet and 11 inches in width. The stairway rises at quite an acute angle from the sidewalk, and from the point at which the end of the news stand is placed against the stairway to its extreme end along the street the height from the street to the stairway varies corresponding to the angle, until at the easterly end of the stand the distance from the sidewalk to the stairway is about 7 feet and 6 inches. It is quite evident that for the greater part of the distance no use could be made by the general public of this portion of sidewalk, as the elevated railway structure practically excludes the use of the street for purposes of passage, and amounts to an appropriation of the space until it reaches such a height that passage under it is practicable. The news stand, therefore, as constructed, cannot be said to furnish any obstruction at all to the public use of the street, except for a distance, at its extreme end, of about a foot. It is quite evident, therefore, that, as matter of fact, little basis exists for saying that the news stand operates to obstruct the street, or that it deprives the public of the practical use of the same for purposes of passage. In fact, the railroad structure has already made practical appropriation of the space in the street occupied by the news stand, and practically excludes the public therefrom. We see no reason, therefore, why the appropriation of this part of the street for the erection of a news stand does not fall clearly within the exception, and allows the legislature to authorize the municipal authorities to grant the right to occupy this space with the structure of which complaint is made. In reality, it is a waste portion of the public street, created by the appropriation of it by the railroad company for a public purpose, and we see no reason why the legislature may not authorize the use of this portion of the street for this purpose. Indeed, it is for the distinct benefit of the city, as it derives a revenue therefrom, and it does not constitute an unreasonable invasion of the public right. Under such circumstances it would seem to be clearly authorized. For a considerable number of years the legislature has authorized the municipal authorities to grant permits for the erection and maintenance of these structures. Their existence does not seem to have in an appreciable degree interfered with the beneficial enjoyment and use by the general public during this considerable period of time. We should have little difficulty, therefore, in disposing of this proceeding in favor of the defendant, based upon these considerations. Assuming, therefore, that the structure is of a character the erection and maintenance of which may be authorized by the legislature, we are confronted with the proposition that, inasmuch as it is in fact an appropriation of a part of the street for private use, it must be sanctioned by some law giving to the municipal authorities the right to grant a permit for its erection and maintenance. By the

provisions of the consolidation act, as amended by chapter 718 of the Laws of 1896, authority was vested in the common council of the city to regulate the use of sidewalks, "and also to grant permits for the erection of booths and stands in or on the space immediately underneath the steps or stairs leading to and from the elevated railroad stations, and within the curb line, for the sale of newspapers and periodicals," limiting the space thus to be occupied to the width of the stairway and in length to a point where the under surface of the stairs should not be at a greater height than seven feet from the sidewalk. It is clear that this act conferred authority upon the common council to authorize the erection and maintenance of the structure now sought to be removed. These provisions of law, however, as we shall hereafter show, were repealed by the Greater New York charter, and, being so repealed, the only present authority existing in the municipal authorities to authorize this structure must be found in the provisions of the charter, as it is not contended that any other law exists conferring it. Sections 1608, 1609, and 1610 of the charter make provision for the effect of the charter upon the consolidation act, and define in what respects it is repealed and in what it is still in force. Section 1608 repeals the consolidation act "so far as any provisions thereof are inconsistent with the provisions of this act, or so far as the subject-matter thereof is revised or included in this act, and no further." Section 1609 provides that the mere omission from the act of provisions of previous acts, including the consolidation act, relating to or affecting the municipal corporations, or any of them, which are thereby united, shall not be held a repeal thereof; and section 1610 provides that all the permanent acts relating to the corporation of the mayor, aldermen, and commonalty of the city of New York, in force when the charter took effect, "which are not inconsistent with this act and its purposes, and which are not revised and included in or the subject matter thereof covered by this act," are extended to the greater city created by the act. By subdivision 3, § 49, of the charter,—the section by which the municipal assembly is empowered to make ordinances,—provision is made for the regulation of the same uses of the streets of the city as is made in the amendment to the consolidation act (chapter 718, Laws 1896); that is, the subdivision revises and includes therein the same subject-matter, viz.: "To regulate the use of streets, highways, roads, public places and sidewalks, * * * and to prevent encroachments upon and obstructions to the same, and to authorize and require their removal by the proper department; but they shall have no power to authorize the placing or continuing of any encroachment or obstruction upon any street or sidewalk, except the temporary occupation thereof, during the erection or repairing of a building on a lot opposite the same, nor shall they permit the erection of booths and stands within stoop lines, except for the sale of newspapers, periodicals, fruits and soda-water, and with the consent in such cases of the owner of the premises." This provision is a revision of the matter contained in the act of 1896, and a re-enactment of a portion of such act; but the legislature has left out of

it that portion of the consolidation act which related to stands and booths under stairways of the elevated railroad structures.

In view of the nature of the enactment and the language of the various sections claimed to operate as saving clauses, it seems clear that it was the intent to repeal so much of the consolidation act as authorized the municipal assembly, or the board of alderman, to permit the use of the streets for the purpose of erecting and maintaining stands and booths in the location this one occupies, and to confine the same to "stoop lines," and to cases where the consent of the owner can be secured. Any other construction violates the language of the subdivision and of the so-called "saving clauses." To hold that such provision is not repealed is to hold that in force which is clearly inconsistent with the provisions of the charter, and the subject-matter of which is revised and included in the charter. If it had been the intent to retain both the provisions of the act of 1896 as to stands and booths and their location, it is evident that the legislature would have expressed the intent in some way other than by the very general language of the saving sections. It would not have carefully re-enacted the provision as to stands and booths within stoop lines, and said nothing about the other locations mentioned in the act of 1896. Such a construction would do violence to the express language of the charter, "shall have no power to authorize the placing or continuing of any encroachment or obstruction, * * * except the temporary," etc.; "nor shall they permit the erection of booths and stands, * * * except," etc. This language is clearly mandatory, and to hold the act of 1896 in force is to create exceptions not contained in the revision, and also to overthrow the limitation as to stoop lines, and, in effect, say that the municipal council may permit stands and booths in other localities than within stoop lines, and without the consent of the abutting owners. It seems to us manifest that the provisions of the act of 1896 permitting the erection of such stands and booths as the one in question are repealed, and the relator is entitled to the relief for which he prayed. If we are correct, therefore, in this view, there did not exist any authority in the municipal assembly to grant a permit for the erection of this structure; consequently there is no authority for its existence. It follows that the order should be reversed, with $10 costs and disbursements, and the writ directed to issue, with $10 costs.

PATTERSON and McLAUGHLIN, JJ., concur.

LAUGHLIN, J. (dissenting). It is not clearly shown that the news stand constituted an unlawful obstruction of the public street, or is a nuisance per se; and the refusal of the court to award the writ of mandamus was the exercise of a sound judicial discretion. The ordinance under which the license was—in form, at least— regularly issued, was lawfully enacted at a time when there was express legislative authority therefor (subdivision 3, § 86, c. 410, Laws 1882, as amended by chapter 115, Laws 1888, as further amended by chapter 718, Laws 1896), and it still remains upon the

records of municipal laws as a valid and subsisting ordinance. The licensee presumably paid the fee prescribed by the ordinance upon the faith of the license, and in reliance thereon also erected the news stand. He is not a party to this proceeding, nor is his presence necessary. In re Bohnet, 8 App. Div. 293, 40 N. Y. Supp. 1140; Bohnet v. City of New York, 150 N. Y. 279, 44 N. E. 949. His interest, if any he have, finds protection in the court, which refrains from using this high prerogative writ where the right thereto is open to question, or where vested rights of other parties may be affected; and this is further emphasized by the universal rule that no return can be made to this state writ except that it has been executed according to the command thereof. In brief, the office of the writ of mandamus is to enforce a plain, legal duty. It behooves the court, therefore, to proceed with caution and discretion, to the end that the issue of the writ may not be directed excepting in a case where the right thereto is clear, and does not rest in doubt. Councils of Reading v. Commonwealth, 11 Pa. 196; People v. Board of Police, 107 N. Y. 235, 13 N. E. 920; People v. Thompson 32 Hun, 93; People v. Board of Assessors of Brooklyn, 137 N. Y. 201, 33 N. E. 145; People v. Manhattan Railway Co., 20 Abb. N. C. 397. It must be borne in mind, in determining this appeal, that the city owns in trust the fee of the street in question. The facts are clearly stated in the prevailing opinion, and it appears therefrom, and is therein conceded, that this news stand does not materially obstruct public travel or traffic. The travel and traffic longitudinally along the street is not in the least obstructed by the news stand, for at this point such travel is lawfully obstructed for a greater width by the elevated railroad stairway. Nor does it appear that it obstructs public travel or traffic transversely across the street. It is not located within the lines of a cross walk. As is well stated in the prevailing opinion, this stand could not obstruct travel or traffic for more than one lineal foot at the point furthest from the foot of the stairway, and the entire space occupied by the stand may be said to be a waste portion of the public street. While technically an obstruction, practically it is no obstruction at all. The court is not obliged to send forth this extraordinary writ for the removal of every trifling obstruction which does not in fact obstruct travel or traffic. The relator is not an abutting owner; and, even though an abutting owner might maintain the writ, it cannot be issued at the behest of another for his benefit, or upon grounds which might afford him a right to such remedy. People v. Mayor, etc., of City of New York, 20 Misc. Rep. 189, 45 N. Y. Supp. 900. It is expressly provided in section 41 of the Greater New York charter that the ordinances of the city of New York in force at the time of its enactment, "so far as the same are not inconsistent" therewith, are continued in full force and effect in said city, subject to modification, amendment, or repeal by the municipal assembly. It is very doubtful whether this ordinance has been repealed by the Greater New York charter. The power of the municipal assembly to enact ordinances under subdivision 3 of section 49 of the present charter and the prohibitions therein should

not be construed, in case of doubt, against the city's power. The legislature, by providing for certain exceptions to the prohibition against authorizing the placing or continuing of encroachments or obstructions upon the street, did not intend to prohibit any and all other encroachments or obstructions. If it did, obstructions incident to local improvements in, over, or under the streets, the erection of temporary reviewing stands, and all other obstructions, even of a temporary nature, excepting those made during the erection or repairing of a building on a lot opposite the same, and excepting, also, those expressly authorized within the stoop lines, would be unlawful, and subject to removal forthwith bv this summary process upon the application of any citizen. Obstructions of a similar kind to those excepted are doubtless prohibited. Tinkham v. Tapscott, 17 N. Y. 141. A news stand in an unused and practically useless part of a public street does not constitute an obstruction similar to building material and structures which occupy part of the traveled street or walk, and seriously impede public travel or traffic. The prohibition against allowing the erection of news stands within stoop lines, without the consent of the adjacent owner, does not necessarily prohibit their erection elsewhere. Although it is not free from doubt, I am of opinion that the express authority contained in the amendment of 1896, to enact ordinances in the future, granting licenses to erect news stands under elevated railroad stairs, has been repealed by the Greater New York charter on the theory that the latter statute contains a revision of the laws on that subject. That, however, is not decisive of the case at bar. I think that the city, by virtue of its ownership of the fee, and its general power and control over the streets, and its authority to enact ordinances to regulate the use of the streets, and the general welfare clause, possessed ample authority to authorize the erection of such a news stand in such location and of such dimensions, both before the enactment of the amendment of 1896 and since the revision contained in the Greater New York charter, by which the express language of said amendment was omitted. The enactment of the amendment raises no presumption that the authority did not previously exist, and, if it did so exist, the repeal of the amendment would not repeal the ordinance, even if there were no reservation in that regard. Suth. St. Const. § 329; Trustees of Erie Academy v. City of Erie, 31 Pa. 516, 517; Chamberlain v. City of Evansville, 77 Ind. 542. It is expressly provided in section 50, Greater New York Charter, that the legislative power of the municipal assembly to enact ordinances shall not be deemed l'mited by the enumeration of powers contained in section 49, and further authority in the form of a general welfare clause to enact additional ordinances is therein conferred. It not having been clearly established as matter of law that this news stand was per se a nuisance, and a substantial obstruction, its removal should not be compelled by mandamus.

O'BRIEN, J., concurs.