PEOPLE OF THE STATE OF NEW YORK ex rel. HARRY B. WEATHERWAX, Petitioner, *v.* JAMES R. WATT, as Mayor of the City of Albany, Defendant.

(Supreme Court, Albany Special Term, April, 1921.)

Mandamus — when writ will issue upon the application of a private citizen requiring the mayor of a city to enforce section 26 of the Transportation Corporations Law — Transportation Corporations Law, § 26 — Second Class Cities Law, § 54 — Public Service Commissions Law, §§ 48, 57 — Penal Law, § 29.

Where a clear legal right exists and there is no other adequate remedy, a writ of mandamus may issue in the discretion of the court. (P. 148.)

A mandamus proceeding to enforce a right in which the general public is interested, to wit, that the streets of a city shall remain unobstructed and unencumbered, may be maintained by a citizen and resident of the city. (Pp. 127–134.)

Where it is made to appear that in the city of Albany, for at least six weeks, more than 500 motor vehicle lines of the character described in section 26 of the Transportation Corporations Law, which in the interest of the public welfare prohibits bus lines or any vehicles carrying passengers at a rate of fare of fifteen cents or less for each passenger within the limits of the city, have been and are now being unmolestingly operated upon the public streets of the city without the consent of the local authorities and without a certificate of public necessity and convenience from the public service commission, as required by said section of the Transportation Corporations Law, and it further appears the mayor of the city, one of whose duties under section 54 of the Second Class Cities Law is to see that the laws of the state are executed, has openly and publicly announced his positive refusal to perform such duty, a writ of mandamus, upon the application of a citizen of the state who is also a resident of the city, will be granted requiring the said mayor to direct the commissioner of public safety, who is neither a proper nor necessary party to the present proceeding, to enforce by action of the police department of the city, the provisions of section 26 of the Transportation Corporations Law. (Pp. 121–123, 150–151, 155.)

In such case, neither a direction of the public service commission to its counsel to proceed under section 48 or section 57 of the Public Service Commissions Law, which means that each individual operating a jitney unlawfully must be proceeded against separately, or to conduct a summary proceeding in the Supreme Court to have the unlawful act enjoined, can, in the extraordinary situation presented here, be deemed an adequate remedy. (Pp. 148–150.)

Violations of the provisions of section 26 of the Transportation Corporations Law are punishable as misdemeanors under section 29 of the Penal Law. (P. 139.)

APPLICATION for peremptory writ of mandamus.

Sanford & Alexander (Rollin B. Sanford, of counsel), for petitioner.

John J. McManus, Corporation Counsel, for respondent.

HINMAN, J. This is an application for a peremptory writ of mandamus. The relator, Harry B. Weatherwax, makes the application as a citizen of the state and a resident of the city of Albany. The petition asks for a writ of mandamus directed to James R. Watt, as mayor of the city of Albany, requiring him to enforce within the city of Albany those provisions of section 26 of the Transportation Corporations Law which prohibit bus lines or any vehicles carrying passengers at a rate of fare of fifteen cents or less for each passenger within the limits of the city from operating along the streets of the city without procuring the consent of the local authorities and of the public service commission.

It appears, without dispute, that Albany is a city of the second class; that by section 54 of the Second Class Cities Law it is expressly made the duty of the mayor to see that the city officers and departments

faithfully perform their duties, to maintain peace and good order within the city and to take care that the laws of the state are executed and enforced within the city; that for at least six weeks more than 500 motor vehicle lines of the character described in section 26 of the Transportation Corporations Law have been and now are being operated upon the public streets of Albany without the consent of the local authorities and without a certificate of public necessity and convenience from the public service commission; that all of said motor vehicle lines have so operated and are continuing to so operate without being in any manner prevented or restrained by the said mayor or by the city officers, or departments under him; that the said violations of law are and have been during the whole period open, notorious and general throughout the city; that the persons operating said vehicles have during all said times and now continue to openly and publicly call out their routes and the fares and solicit passengers, and display signs on their vehicles indicating the route, the rate of fare and destination of the route, all in the most public places of the city and the most frequented streets and in the presence and hearing of the members of the police department of the city; that the acts of said persons and the operation of said motor vehicle lines are so open and notorious and have been so long continued that the said mayor is chargeable with knowledge thereof; that in fact on several different dates from March 25 to April 5, 1921, the relator notified the said mayor that hundreds of said auto lines were being operated unlawfully in the city of Albany and requested the said mayor to enforce the law; but that on the 5th of April, 1921, the said mayor informed the relator and announced to the public of said city that he refused to stop the operation of said motor

vehicle lines and gave as his reason the advice of the corporation counsel of said city that such acts of the persons so operating did not constitute a crime punishable as a misdemeanor.

Supporting affidavits, also uncontradicted, reveal about fifty concrete illustrations of violators, giving the name of owner, license number, type of vehicle and signs displayed showing route and fare.   The affiants swear to having taken repeated trips upon them as passengers, paying the fare prescribed and travelling over the routes described by their respective signs.

The answer of the said mayor raises no issue as to any of the foregoing facts.   It is conceded upon the papers before me that the provisions of section 26 of the Transportation Corporations Law are being and have been for a long period violated in a wholesale, open and notorious manner, so glaringly a matter of common knowledge that the court might even take judicial notice of the fact.

In fact the answer of the said mayor is wholly a plea in the nature of a confession and avoidance.   He says that the relator is vice-president of the United Traction Company, which operates a street railway in the city of Albany and elsewhere; that said traction company has not been granted an exclusive franchise to transport passengers for hire upon the streets of Albany; that because of a strike of its employees, said traction company ceased operations on all of its lines in said city on January twenty-ninth last and did not attempt to resume operations until an order was made by the public service commission, effective February 8, 1921, requiring it to resume operations and to furnish safe and adequate service; that no service at all has been furnished by said traction company from January 29, 1921, to date on its Second avenue and Livingston avenue lines and that adequate

service for the entire traveling public has not been furnished upon its other lines and is not now being furnished by it; that the number of cars now being operated in the city is about thirty-five as against about eighty cars usually operated in the city prior to the strike; that the enforcement of section 26 of the Transportation Corporations. Law is in the first instance wholly within the jurisdiction of the public service commission; that such commission has general supervision of all common carriers and has sole jurisdiction to determine in the first instance whether the operation of said motor vehicle lines is a violation of said section 26; that he is informed by his corporation counsel that a violation of said section 26 is not made a crime by any statute but on the contrary every owner or operator of such a motor vehicle line is expressly made subject to the provisions of the Public Service Commissions Law; that the Public Service Commissions Law and the Transportation Corporations Law are *in pari materia* and that sections 25 and 26 of the Transportation Corporations Law are to be considered as incorporated in the Public Service Commissions Law and are a part thereof; that by section 56 of the Public Service Commissions Law, any common carrier violating section 26 of the Transportation Corporations Law shall forfeit to the people of the state not to exceed $5,000 for each offense; that there is no provision in either of said statutes providing that any such common carrier shall be guilty of a crime for any violation of either of said statutes; that the duty of owners of such motor vehicle lines to obtain such local consent and certificate was a new duty imposed by the Laws of 1915 and not required prior to that time and that in such a case, if a penalty and mode of procedure be given by the

same statute for its violation, the remedy given is exclusive.

The said mayor thus denies that a crime is being committed by violation of section 26 of the Transportation Corporations Law; denies that he has any right to stop the operation of the said motor bus lines by reason of his having no jurisdiction to enforce within the city of Albany the observance of any of the provisions of said section 26, and alleges upon information and belief that any person including the members of the police force who might cause or instigate the arrest of any of the persons mentioned in the petition for an alleged violation of said section 26 would be liable in damages in a suit for false imprisonment or malicious prosecution, in the event that it should thereafter be determined that any violation of said section does not constitute a crime.

He further contends that by the Second Class Cities Law the commissioner of public safety has supervision and control of the police department of the city and that said commissioner of public safety is a necessary party defendant.

He further objects to being required to enforce this statute upon the ground that the petitioner and each and every citizen has an adequate remedy at law, if misdemeanors are being committed, in that the petitioner or any citizen may lay any information before a magistrate and procure a warrant for the arrest of any violator.

And finally, the said mayor alleges upon information and belief, that the said traction company is not affording reasonable, just and adequate transportation upon its lines within the city and that an emergency has been created in which others must engage in the transportation of passengers so that business within the city shall not be entirely blocked or dis-

Supreme Court, April, 1921.        [Vol. 115.

couraged; that as mayor of said city he has been and is in good faith exercising his judgment and discretion in the premises and believes it would be an injustice upon the public if any steps were taken which would deprive them of adequate transportation; that the whole question of adequate, just and reasonable transportation service in the city should be decided by the public service commission.

The learned corporation counsel in an argument and brief showing industry, research and ability, strenuously asserts that these are valid objections to the writ herein sought. Some of the principles formulated by him find support in the authorities, but fall very far short of sustaining his contention that the relator is not entitled to the relief sought.

In his brief he urges a still further objection that the special interest of the relator is not set out in the petition and that for this reason alone his petition should be dismissed. His contention is that the relator having proceeded to argument upon his petition and the opposing affidavits of the respondent, the proceeding is in the nature of a demurrer to the facts set up by the defendant and the right to the writ must be determined upon the assumption that the averments of the defendant's affidavits are true. Citing *People ex rel. City of Buffalo* v. *New York Central & Hudson R. R. R. Co.,* 156 N. Y. 570.

He claims that it appears from the answering affidavits that the relator is seeking to enforce the private interests of the United Traction Company, and that in such a case the special interest of the United Traction Company must be set out in the petition and its private right to relief must be made clearly to appear. Citing *People ex rel. Pumpyansky* v. *Keating,* 62 App. Div. 348, reversed on other grounds, 168 N. Y. 390.

His citation of this authority is an unfortunate one for his contention, as I shall endeavor to show. Both the Appellate Division and the Court of Appeals sustain the proposition that an application for a peremptory writ of mandamus commanding the commissioner of highways of the city of New York to remove a stand for the sale of newspapers and periodicals upon a street of the city, is a proceeding to enforce a right in which the general public is interested and may be maintained by a citizen and resident of the city; that it was a right in which the general public is interested, to wit, that the streets of the city shall remain unobstructed and unencumbered. The case was reversed by the Court of Appeals in order that a new trial might determine to what extent, if any, there was an encroachment upon the traveled portion of the sidewalk. In the opinion of the Appellate Division on this point, which was expressly approved by the Court of Appeals, the court referred to the rule that where the relator seeks to enforce a private right, his special interest must be set out in the petition and his right to relief must be made clearly to appear, but the court said that this rule was not applicable in that case, saying at page 350: "It is plain that the relator has standing to maintain this proceeding. The right which the writ seeks to enforce affects the general public, and, under such circumstances, the enforcement of the right, is the concern of every citizen, and no special interest, except that of the general public, need be shown."

The contention of the corporation counsel is based upon a theory which is untenable. His theory is that the enforcement of section 26 of the Transportation Corporations Law deals only with the question of a vehicle carrying passengers in competition with another common carrier which is required by law to

obtain the consent of the local authorities of the city to operate over the streets thereof. The fact is, however, that no question of competition with such a common carrier is necessary to be determined in connection with this decision.

In my decision recently rendered in the case of *United Traction Co.* v. *Smith,* 115 Misc. Rep. 73, I called attention to the authorities as to the variety of cases covered by said section 26. For example, I called attention to the carefully prepared opinion of Mr. Justice Brown in *Public Service Commission* v. *Hurtgan,* 91 Misc. Rep. 432, in which, at page 435, he graphically outlines the cases in which a license must be obtained.

Mr. Justice Brown states that the statute requires such consent for the operation in a city of either

"(a) A bus line,

"(b) A stage route,

"(c) A motor vehicle line or route,

"(d) A vehicle in connection with a bus line, a stage route, a motor vehicle line or route,

"(e) A vehicle carrying passengers at a rate of fare of fifteen cents or less within the limits of a city.

"(f) A vehicle carrying passengers in competition with another common carrier which is required by law to obtain the consent of the local authorities of said city to operate over the streets thereof.

" The statute is that to lawfully operate any one of the above six specified lines, routes or vehicles, in a city, the consent of the local authorities and a certificate of the Public Service Commission must be first obtained, provided such line, route or vehicles, are engaged in the business of carrying passengers for hire in the city."

The petition herein in paragraph 4 makes no reference to vehicles carrying passengers in competition

with another common carrier, but refers to the unlaw-
ful operation of motor vehicles as bus lines, stage
routes and motor vehicle lines carrying passengers for
hire at a rate of fifteen cents or less for each pas-
senger. The mere fact that one of the incidental
effects of the operation of these vehicles is to compete
with another common carrier of which the relator is
the vice-president is beside the question, if the relator
is seeking to enforce a right in which the general pub-
lic is interested, which is clearly the case here.

In order that we may clearly see that this proceed-
ing is not one sounding in the private interest of the
United Traction Company of which the relator is the
vice-president, but in the interest of the general pub-
lic, it may be very beneficial to consider the history
and terms of section 26 of the Transportation Corpo-
rations Law, in order that we may understand the
purpose which the legislature sought to serve.

Prior to 1913 there was no express provision in the
statutes with reference to bus lines being deemed to
be included within the meaning of the term " common
carrier " as used in the Public Service Commissions
Law, except under section 24 of the Transportation
Corporations Law, which related to any person or
corporation owning or operating any stage route in
any city of 1,000,000 inhabitants or more, namely, the
city of New York.

By chapter 495 of the Laws of 1913, section 25 was
added to the Transportation Corporations Law. Sec-
tion 25 enlarged the jurisdiction of the public service
commission by prescribing that any person or corpo-
ration owning or operating a bus line wholly or partly
along a highway constructed wholly or partly at the
expense of the state, or along any highway in any city
of the first class other than New York city, should
be deemed a common carrier within the meaning of

that term as used in the Public Service Commissions Law.

Then by chapter 667 of the Laws of 1915, section 25 was amended and section 26 was added to the Transportation Corporations Law. By this amendment and addition to that statute, the jurisdiction of the public service commission was further extended to any bus line or motor vehicle line or any vehicle carrying passengers at fifteen cents or less each within the limits of any city or in competition with another common carrier which is required by law to obtain the consent of the local authorities of the city to operate over the streets thereof.

But this addition to the statute went beyond the proposition of making such common carrier subject to the jurisdiction of the public service commission and required such bus line or other vehicle line above described, to obtain the consent of the local authorities of said city, " upon such terms and conditions as said local authorities may prescribe." The operation of any such bus line or motor vehicle line or motor vehicle above described was prohibited without first obtaining the consent of the local authorities and without obtaining in addition thereto a certificate of public necessity and convenience from the public service commission. It was not necessary to provide in section 26 for such certificate of necessity and convenience, because that was not only provided for in section 25 of the Transportation Corporations Law, but was provided for in section 53 of the Public Service Commissions Law, under which a common carrier was prohibited from exercising any franchise or right under any provision of any law without first having obtained the permission and approval of the public service commission to the effect that the exercise of such franchise or privilege is necessary or convenient

for the public service. Presumably for the sake of harmony of the statutes, however, and out of an abundance of caution, section 26 provided for a prohibition against operating any such bus line, etc., until the receipt of a certificate of public necessity and convenience.

It is plain that section 26 of the Transportation Corporations Law was enacted by the legislature for the purpose of conferring upon the local authorities of any city the right and the duty to regulate and prescribe the terms under which such bus lines, etc., should be operated over the streets of such city, and to afford the protection of the city's property, its pavements, improvements and bridges, together with the protection of the passengers of such bus lines and all other persons using such streets, which such regulation and control would provide.

In other words it was a general provision in the interest of the public welfare, in the upkeep of the streets and in the protection of the passengers and in the protection of other users of the streets by vehicle or as pedestrians, that section 26 was passed. Incidentally, of course, the regulation of these bus lines tended to and does result in the protection of the investment of those who were operating railway lines under a legal franchise from unjust and improper competition, because of the financial loss resulting and the destruction of the service guaranteed to the public through the supervision of such existing railway lines by the public service commission. The intent was that all common carriers should be subject to the same supervision by the public service commission, but so far as the protection of an existing common carrier from improper competition was concerned, that matter was left entirely to the

public service commission and not to the local authorities.

Thus I would say that the duty which was delegated to the city was a duty in the public interests rather than a duty relating to the question of competition with another common carrier. The fact is that if there were no railway lines in the city of Albany or if a new section of the city were being built up and which was not convenienced by any existing transportation lines, it would nevertheless be the duty of the city to require any bus line to obtain the consent of the city upon such terms and conditions that the city might prescribe before such bus line could operate lawfully. It is not a question of competition so far as section 26 is concerned; it is a question of the protection of the public interests and section 26 sets forth some of the terms and conditions which may be included by the city as pre-requisites to the granting of the franchise, namely,

(A) Description of route.

(B) Rate of speed.

(C) Compensation for wear and tear of pavement, improvements and bridges.

(D) Safeguarding passengers and other persons using the streets over which such vehicles are to operate.

(E) The execution and delivery of a bond to provide adequate security for the performance of the terms and conditions of such consent, including adequate security for the payment of any damages occurring to any person on account of the operation of such bus line or route, such as passengers and other persons using the streets.

Each one of these terms and conditions for the local consent prescribed by the city, speaks in terms of public protection and not in the interest of any com-

peting carrier. Thus I would say that section 26 was put in the statute, not for the purpose of giving to the public service commission any jurisdiction, but to provide for local consent upon such terms as would protect the local public and the local property.

A strike of the employees of a local railway company has led to the operation of the so-called " jitneys " upon the streets of the city of Albany, but the provisions of section 26 have no relation whatsoever to the question whether or not adequate railway service is being rendered by such traction company, or whether a strike is in existence as to the justice of which public opinion is divided. It is solely a question of the performance of public duty in the carrying out of a statute designed entirely to protect the city streets and the users of the city streets. A legal method for such protection has been devised by this statute and if an emergency of any kind exists, it can be met in the same legal way.

The fact that these bus lines are made common carriers and thus subject to the public service commission, is a thing separate and distinct from the fact that the local authorities have had conferred upon them by statute a power and a duty, not conferred upon the public service commission, to prescribe the terms and conditions which will protect the city's property and all persons using the streets of such city, to prescribe regulations which will tend to prevent injury so far as possible and indemnify against such damage as may result notwithstanding such regulations.

So it is plain that the relator has standing to maintain this proceeding. " The right which the writ seeks to enforce affects the general public, and, under such circumstances, the enforcement of the right is

the concern of every citizen, and no special interest, except that of the general public, need be shown.''

The basic reason urged by the corporation counsel for withholding the relief asked for by the relator is that the acts alleged in the petition do not constitute crime under the laws of the state of New York. I have already expressed the opinion that the operation of such unauthorized jitneys is contrary to statute and that it is punishable under section 29 of the Penal Law. I think my declaration to that effect was not obiter, but was warranted by the record before me and by the arguments made and by facts of such quantity and notoriety that the court might well take judicial notice of them. *United Traction Co.* v. *Smith,* 115 Misc. Rep. 73. However that may be, the corporation counsel has considered my holding in that case as not necessary to my decision and has since advised the mayor in a written opinion that the offense is not punishable as a crime, courteously holding that I did not have the benefit of a full discussion of the question by counsel.

There is no provision in the Transportation Corporations Law imposing any penalty for a violation of section 26 of that statute. The Penal Law provides, however, in section 29 thereof as follows:

'' § 29. Violation of statute which imposes no penalty is a misdemeanor. Where the performance of any act is prohibited by a statute, and no penalty for the violation of such statute is imposed in any statute, the doing such act is a misdemeanor.''

Section 1937 of the Penal Law provides as follows:

'' § 1937. Punishment of misdemeanors when not fixed by statute. A person convicted of a crime declared to be a misdemeanor, for which no other punishment is specially prescribed by this chapter, or by any other statutory provision in force at the time

of the conviction and sentence, is punishable by imprisonment in a penitentiary, or county jail, for not more than one year, or by a fine of not more than five hundred dollars, or by both.''

It is plain that no penalty for the violation of section 26 of the Transportation Corporations Law has been imposed under that law. The corporation counsel contends, however, that a penalty has been prescribed for such violation by section 56, subdivision 1, of the Public Service Commissions Law, upon the theory that the Public Service Commissions Law and the Transportation Corporations Law are *in pari materia,* that is, statutes which must be read together.

Section 56, subdivision 1, of the Public Service Commissions Law provides that: ''Any common carrier, * * * which shall violate any provision of this chapter, or which fails, omits or neglects to obey * * * any order * * * of the commission, shall forfeit to the people of the state of New York, not to exceed the sum of five thousand dollars for each and every offense * * *.''

It is to be noted that section 56, subdivision 1, of the Public Service Commissions Law imposes a penalty for a violation of any provision of the *Public Service Commissions Law* or of an order of the commission.

A penalty for the violation of any provision of the Public Service Commissions Law is clearly not a penalty prescribed for a violation of the Transportation Corporations Law or of any law, other than the Public Service Commissions Law.

Perhaps the corporation counsel has been misled by the thought expressed by him in the answer of the respondent to the effect that in the construction of the two statutes in question, sections 25 and 26 of the Transportation Corporations Law are to be con-

sidered as incorporated in the Public Service Commissions Law and are a part thereof; that any common carrier violating section 26 of the Transportation Corporations Law shall be deemed to have violated the Public Service Commissions Law and shall be liable to the penalty prescribed therefor by section 56 of the latter law. It is the rule of construction of statutes *in pari materia* that they should be harmonized, read together and so far as consistent with each other, should be construed as if they had originally constituted one enactment; but he is in error in gleaning the thought from such rule that sections 25 and 26 of the Transportation Corporations Law are to be considered as incorporated in the Public Service Commissions Law so as to render a penalty provision of the latter law for any violation of " any provision of this chapter " (Pub. Serv. Comm. Law) applicable to a violation of said section 26 of the Transportation Corporations Law. The fact is that section 25 of the latter law makes the Public Service Commissions Law, so far as it relates to common carriers, applicable to itself. The Public Service Commissions Law is deemed a part of sections 25 and 26 of the Transportation Corporations Law and so far as the former contains provisions relating expressly to sections 25 and 26 of the latter law or to violations of " any law " or has provisions applicable to " any common carrier," such provisions are deemed to be a part of said sections 25 and 26.

It is only the relevant provisions of the Public Service Commissions Law that are applicable. If a penalty is prescribed in a particular article of a statute for any violation of any provision of such article, would anyone contend that such penalty covered a violation of the provisions of any other article of that statute? Yet both articles are parts of the same

enactment.   The conclusion reached by the corpora-
tion counsel is equally untenable when he urges that
a penalty for an offense against the Public Service
Commissions Law may be deemed a penalty for an
offense against section 26 of the Transportation Cor-
porations Law.   The two statutes may be interpreted
together as parts of one whole enactment, but the
Public Service Commissions Law must be considered
as though a separate article thereof and sections 25
and 26 of the Transportation Corporations Law as
though sections of another separate and distinct
article.

A penalty clause in a statute should be construed
in accordance with its plain terms and not enlarged
by implication, and the plain terms of section 56, sub-
division 1, relate only to a violation of the Public
Service Commissions Law.   If it had been the inten-
tion of the legislature to apply such penalty to a vio-
lation of the Transportation Corporations Law or
any law relating to common carriers, other than the
Public Service Commissions Law, the legislature
would have adopted the scheme of the Public Service
Commissions Law generally where such a purpose
was intended as for example, the language used in
section 48 of the Public Service Commissions Law,
which gives to the commission the power and the duty
to investigate any violation of " any provision of
law " by a common carrier and to make an order in
relation thereto; or as in section 57 for example, where
provision is made for a summary proceeding in the
Supreme Court at the instance of the commission
and its name, for the purpose of stopping and pre-
venting a common carrier from doing anything " in
violation of law."   Other instances could be set forth
which are of similar import as for example, the pro-

vision of section 74 of the Public Service Commissions Law.

In other words, section 56, subdivision 1, of the Public Service Commissions Law by its plain terms relates to a violation by a common carrier of any provision of the Public Service Commissions Law, and not to "any violation of law" by a common carrier.

If it is contended that a penalty for the violation of section 26 of the Transportation Corporations Law has been imposed through the medium of a proceeding instituted by or before the public service commission and subjecting a common carrier to an order of the commission requiring it to obey " any provision of law," including section 26 of the Transportation Corporations Law, the answer to that contention is that the penalty imposed through such a proceeding is a penalty for the violation of an order of the commission and is not a penalty for the violation of the Transportation Corporations Law.  In other words, there is no penalty prescribed in the Public Service Commissions Law for violations of section 26 of the Transportation Corporations Law and for which violations the commission is empowered to hold a hearing and impose the penalty.  There may be a thousand violations of section 26 of the Transportation Corporations Law, and a thousand hearings to determine that there were a thousand violations and there may be a thousand orders to discontinue the thousand violations, and yet, there is no penalty prescribed in the Public Service Commissions Law or elsewhere for such past violations of the Transportation Corporations Law.  There is no penalty whatsoever prescribed until and unless there is a disobedience of the order or orders of the commission after such hearing and determination.  Surely such penalties for the violations of the orders of the com-

mission cannot be deemed to be penalties for the violation of the Transportation Corporations Law. No penalty is prescribed for the past offense. The penalty is for the continuance of the offense after the order of the commission.

Therefore section 29 of the Penal Law is applicable. It is plainly the law that violations of section 26 of the Transportation Corporations Law are punishable as misdemeanors under section 29 of the Penal Law, and that the penalty of $5,000 for each offense is administered only in cases where the offense is continued in spite of an order of the public service commission.

The applicability of section 29 of the Penal Law to such a case as this is abundantly supported by the authorities. *Gardner* v. *People,* 62 N. Y. 299; *Marra* v. *N. Y. C. & H. R. R. R. Co.,* 139 App. Div. 707; *Keller* v. *Erie R. R. Co.,* 183 N. Y. 67; *Matter of Vanderhoff,* 15 Misc. Rep. 434; *Matter of Pickett,* 55 How. Pr. 491; *People* v. *Olcese,* 41 Misc. Rep. 102.

Another error, however, in the contention of the corporation counsel lies in the fact that he has not properly analyzed all the provisions of the Public Service Commissions Law in his effort to apply the penalty provisions of that law to violations of the Transportation Corporations Law. Thus if we assume for the sake of argument that the penalty provisions of the former are applicable, we find that the offense in question has been expressly made a misdemeanor.

To be more specific, if the violation of " any provision of this chapter " wherever found in the Public Service Commissions Law, relates to a violation of the Transportation Corporations Law, upon the theory of the corporation counsel, then the Public Service Commissions Law has provided, not only a

penalty of $5,000 for each offense, running against any common carrier who is guilty of such violation, but has provided under section 56, subdivision 2, that violations by every officer and agent of any common carrier are misdemeanors and has provided under section 58, subdivision 2, that violations by *every person,* either *individually or* as officer or agent of a corporation other than a·common carrier, are misdemeanors.

Section 56, subdivision 2, of the Public Service Commissions Law provides as follows:

" 2. Every officer and agent of any such common carrier or corporation who shall violate, or who procures, aids or abets any violation by any such common carrier or corporation of, any provision of this chapter, or who shall fail to· obey, observe and comply with any order of the commission or any provision of an order of the commission, or who procures, aids or abets any such common carrier or corporation in its failure to obey, observe and comply with any such order or provision, shall be guilty of a misdemeanor."

Section 58 of that law provides as follows:

" § 58. Penalties for other than common carriers. 1. Any corporation, other than a common carrier, railroad corporation or street railroad corporation, which shall violate any provision of this chapter, or shall fail to obey, observe and comply with every order made by the commission under authority of this chapter so long as the same shall be and remain in force, shall forfeit to the people of the state of New York, a sum not exceeding one thousand dollars for each and every offense; every such violation shall be a separate and distinct offense, and the penalty or forfeiture thereof shall be recovered in an action as provided in section twenty-four of this chapter.

" 2. Every person who, either individually or acting as an officer or agent of a corporation other than a common carrier, railroad corporation or street railroad corporation, shall violate any provision of this chapter, or fail to obey, observe or comply with any order made by the commission under this chapter so long as the same shall be or remain in force, or who shall procure, aid or abet any such corporation in its violation of this chapter or in its failure to obey, observe or comply with any such order, shall be guilty of a misdemeanor.

" 3. In construing and enforcing the provisions of this chapter relating to forfeitures and penalties the act of any director, officer or other person, acting for or employed by any common carrier, railroad corporation, street railroad corporation or corporation, acting within the scope of his official duties or employment, shall be in every case and be deemed to be the act of such common carrier, railroad corporation, street railroad corporation or corporation."

· I have set forth the whole of the latter section for the reason that the corporation counsel argues that it has no application to common carriers and is not applicable here. He relies upon the title of this section and upon the decision of *People* v. *Dempsey,* 180 App. Div. 765. In that case, the court reversed a conviction of an employee of a common carrier but the indictment was based upon a violation of subdivision 2 of section 56. The court's reference to section 58 was only to show the interpretation to be given to section 56, subdivision 2, where the conjunctive " and " is used in the phrase " Every officer and agent," rather than the disjunctive " or " as in section 58, subdivision 2, in the phrase " Every person who, either individually or acting as an officer or agent."

Clearly the title to section 58 is an imperfect guide to the section because subdivision 3 by its own terms relates to common carriers alone and makes the act of any person acting for or employed by any common carrier, if within the scope of his duties, the act of the common carriers in construing and enforcing the penalty provisions of the Public Service Commissions Law.

Subdivision 2 of section 58 does not expressly relate to gas and electric corporations covered by article 4, nor to steam corporations covered by article 5, nor to telephone and telegraph corporations covered by article 6. While found in a section in article 3, relating to common carriers, it is the dragnet provision of the whole chapter and is intended to cover " every person " by way of criminal liability. Each of the other articles carries its own penalties for violation of such article and section 58, subdivision 2, is an omnibus provision making it a criminal offense to violate any provision of any article and is to be read into every article. It is as general and comprehensive as it can be. penned, when a statute refers to " every person."

As was said in *People* v. *Stevens,* 13 Wend. 341: " It is undoubtedly competent for the Legislature to subject any particular offense, both to a penalty and a criminal prosecution; it is not punishing the same offense twice. They are but parts of one punishment; they both constitute the punishment which the law inflicts upon the offense. That they are enforced in different modes of proceeding, and at different times, does not affect the principle."

It is the purpose of the law to punish the intentional doing of the prohibited act. It is not necessary that the act shall be willful in the sense of corrupt or malicious. It is no defense that the act was an

honest misconstruction of the law under legal advice. A mistake of law does not excuse the commission of the prohibited act. *Gardner* v. *People,* 62 N. Y. 299; *People* v. *Dempsey,* 224 id. 140.

The jitney driver may or may not consider his act unlawful but no jitney driver is conducting his common carrier activities unintentionally or unknowingly, no matter how erratic his behavior may be on the streets of Albany.

Thus the Public Service Commissions Law itself has not made an exclusive remedy through investigation and order of the commission and prescribing a penalty of $5,000 or less for each offense, but has gone to the fullest lengths to make it a misdemeanor for *any* person, whether connected with a common carrier or not, to violate any provision of the Public Service Commissions Law.

*Every* person has been placed under the restraint of becoming liable as a misdemeanant for personal violation of the statute or of the orders of the commission; and in addition thereto the Public Service Commissions Law has prescribed a more substantial penalty of $5,000 or less, for each offense, to be recovered civilly, where a common carrier has violated the Public Service Commissions Law, or an order of the commission.

Thus, even if we accept the reasoning of the corporation counsel as to the applicability of the provisions of the Public Service Commissions Law, we find that the operation of these bus lines or jitneys in the city of Albany, contrary to the provisions of section 26 of the Transportation Corporations Law, is expressly made a misdemeanor.

To further clarify the situation as to what should be the reasonable interpretation of these statutes in the determination of the question whether or not a

misdemeanor is committed by the violation of section 26 of the Transportation Corporations Law, one further fact is worthy of notice. Section 53 of the Public Service Commissions Law provides that no common carrier shall '' exercise any franchise or right under any provision of the Railroad Law, or of any other law, not heretofore lawfully exercised, without first having obtained the permission and approval of the proper commission.'' Under section 58 of the Public Service Commissions Law, any violation of the above provision by any person is expressly made a misdemeanor. So that if the operators of the bus lines or jitneys in the city of Albany whose operation is in question here had obtained the consent of the city under section 26 of the Transportation Corporations Law, but had not obtained the certificate of necessity and convenience from the public service commission, such persons would have violated section 53 of the Public Service Commissions Law, and would clearly have been guilty of a misdemeanor under the express provisions of that law. Can it be said that it was the purpose of the legislature to grant a greater immunity from punishment in a case where there is no semblance of right to operate such a bus line or jitney, by reason of a total failure to comply with any of the provisions of any statute, than there would be where there had been a compliance so far as local consent is concerned, but a failure of compliance in relation to obtaining a certificate of public necessity and convenience from the public service commission? Any such assumption would be ridiculous on its face and while the legislature might impose such illogical penalties, no reasonable person would reach such a conclusion in the absence of clear warrant of the statute.

The objection raised in the answer that the enforce-

ment of said section 26 is in the first instance wholly within the jurisdiction of the public service commission and that such Commission has sole jurisdiction to determine in the first instance whether the operation of such vehicles is a violation of section 26, has been conclusively determined to the contrary in *Brooklyn City R. Co.* v. *Whalen,* 191 App. Div. 737, and other cases to the effect that the question can be determined in injunction proceedings brought by a common carrier, which has a standing in a court of equity for relief.

A number of the other objections raised in the answer can be answered as a group. They relate to the one question, whether crimes are being committed that should receive the attention of the mayor. It is immaterial that the relator is vice-president of the United Traction Company, as I have shown. It is immaterial whether the United Traction Company has an exclusive franchise or not. And if it were material, the courts have held that a corporation with a franchise not exclusive has a remedy to restrain another assuming to exercise similar powers without a franchise. *Brooklyn City R. Co.* v. *Whalen, supra.*

It is immaterial that a new duty has been created by section 26 of the Transportation Corporations Law making an act unlawful which was lawful before the enactment in 1915. While the law is settled that where a new offense is created and a particular penalty and mode of proceeding is prescribed, that penalty alone can be enforced, it is equally clear that both a penalty and a criminal prosecution may be provided as parts of the same punishment. *People* v. *Stevens,* 13 Wend. 341. And the legislature has not provided a particular penalty unless the Public Service Commissions Law penalties are applicable, in which case both a civil penalty and a criminal prosecution have been expressly prescribed.

10

The question whether the United Traction Company is or is. not rendering reasonable, just and adequate service ·is also immaterial here. The law furnishes a proper remedy to meet an emergency if one exists. The grant of power and duty to the city is not changed by an emergency, nor can it authorize acts that are entirely prohibited by the law. The question of the duty of a city in such a case as this was specifically covered in *Brooklyn City R. Co.* v. *Whalen,* 191 App. Div. 737, from which I quoted extensively in my opinion in *United Traction Company* v. *Smith, supra.* In that case it was urged by the corporation counsel of New York city that the maintenance of the bus lines was justified by emergency and the inadequacy of the service of the street railway lines was put forward as creating the emergency. The court said at page 743: " If the welfare and convenience of the citizens require additional accommodations for transit such as would be furnished by established stage routes, there is a legal way to accomplish the result. The city has power to grant a franchise, subject to the determination of its necessity and convenience. But the city has no power of municipal operation; nor has it the right to authorize others so to use the streets without observing the conditions to a legal and regular grant of a franchise."

And at page 744, the court said: " Whether the plaintiff has failed in fulfilling the obligations of its franchise has nothing to do with the question now before us. If it has, the law affords a remedy. The orderly processes of the law are better and probably more effective than an attempt at correction by an unauthorized and illegal administrative act."

The corporation counsel in his brief herein urges that no peremptory writ of mandamus can issue since

there is a dispute between the United Traction Company and the owners of the motor vehicles in question as to whether such vehicles are operating in competition with the United. Traction Company and also as to whether one vehicle constitutes " a motor vehicle line or route." The answer is that no issue of fact is raised; it is only an issue of law upon conceded facts as I have shown in relation to whether or not the relator is entitled to bring this proceeding without showing a special interest. The statute makes ·the operation of these vehicles unlawful in that they are vehicles carrying passengers for hire at a rate of fare of fifteen cents or less for each passenger. Moreover, the General Construction Law, section 35, makes the plural number include the singular and I have already held in *United Traction Co.* v. *Smith, supra,* that the operation of a single vehicle upon a particular line or route constitutes a bus line or motor vehicle line or route within section 26. · See, also, *Public Service Commission* v. *Fox,* 96 Misc. Rep. 283; *Public Service Commission* v. *Mt. Vernon Taxicab Co.,* 101 id. 497.

No question of competition is necessary to this decision and if there is any propriety in permitting the operation of bus lines where the traction company has failed to run its cars, or any propriety in supplementing the service furnished by the traction company upon its other lines, the law provides a legal remedy, which will not be ignored by this court in the making of its decision and the court can find no just reason for excusing the mayor for his failure to apply the law rather than to ignore the law in the solution of his problems.

The mayor in his answer alleges that, as mayor, he has been and is exercising his judgment and discretion and that he believes it would be an injustice to

the public if any steps were taken to deprive the public of adequate transportation. In the very next paragraph of his answer, however, he asserts that the whole question of adequate, just and reasonable service is a matter for the public service commission. Thus he overlooks his own special duty enjoined upon him and the city by the statute and confesses that in assuming to protect the public he is usurping a function which is wholly the function of the public service commission.

This brings me to the question whether the writ should be issued requiring the mayor to perform any duty enjoined upon him by the law. The writ of manmamus is a remedy to be applied in the discretion of the court in a case where a clear legal right exists and where there is no other adequate remedy.

I have demonstrated that there is a clear legal right. Is there any other adequate remedy?

The chief claim of the respondent is that the matter lies within the jurisdiction of the public service commission either to investigate on its own motion or upon the complaint of another and to make an order, or to conduct a summary proceeding in the Supreme Court to have the unlawful act enjoined. It so happens, however, that it is not within the power of the public service commission to issue a self-executing order effective in all of these cases. The most the commission can do is to direct its counsel to proceed under either section 48 or section 57 of the Public Service Commissions Law which means that no general action can be taken; that each individual operating a jitney unlawfully must be proceeded against separately. It is also clear from the decisions of the court that a common carrier lawfully operating in a city has a standing in court as a plaintiff to do exactly the same thing, namely, to seek an injunction in each

separate case. The commission can do no more as a prosecutor than can the United Traction Company.

Can either of these proceedings be deemed an adequate remedy in this extraordinary situation, where there is such a wholesale violation of the statute by over 500 vehicles in the city of Albany?

Some time ago this court issued an injunction in the case of *United Traction Co.* v. *Smith,* and pronounced the law on the subject. The lawlessness involved continues unabated and it requires no stretch of the imagination to reach the conclusion that the process of importing new jitneys to thus unlawfully operate in the city of Albany, could travel much faster than could the court and counsel under the remedy of piecemeal injunctions.

It is urged by the respondent that the petitioner and every citizen has an adequate remedy at law in procuring warrants for the arrest of these unlawful operators if the act is a crime.

Assuming that this might be so in the case of an isolated crime, it seems absurd to me to say that such a remedy is an adequate remedy, where there is a riot of such violations constantly committed upon the streets of the city by over 500 jitneys without let or hindrance of any kind from authorities charged with the enforcement of the law. Under such circumstances who will say that an adequate remedy is afforded by leaving to the citizen on the street the duty to swear out warrants, while the mayor and his commissioner of public safety and his police force stand idly by, the latter acting under the direct encouragement, if not the demand of the mayor, to adopt a hands-off policy, and where the mayor in a public statement has positively refused to act? The situation needs the restraining power of the whole police force acting under the whip of a mayor who with full power to act

Supreme Court, April, 1921. [Vol. 115.

has put himself in motion, has substituted action for non-action, prohibition for permission.

The Penal Law, section 1841, provides that a public officer upon whom any duty is enjoined by law who willfully neglects to perform the duty, is guilty of a misdemeanor where no other penalty is specifically provided by statute. This is not an adequate remedy. A similar provision is found in section 1857 of the Penal Law.

In the case of *Goodell* v. *Woodbury*, 71 N. H. 378, it was held that a remedy by removal of the officer would not prevent mandamus to compel a chief of police to prosecute violations of the liquor law. The court said: " This remedy is clearly not an adequate one. At most, it cannot enforce the duty in question, and leaves the required act still unperformed. It is a fundamental rule that a remedy which does not compel specific performance is inadequate, and constitutes no bar to a writ of mandamus. To supersede it, a party must not only have a specific, adequate, legal remedy, but one competent to afford relief upon the very subject-matter of his application, and which is equally speedy, convenient, complete and beneficial. * * * It is quite too obvious for discussion that a petition to the commissioners for the defendants removal from office is not such a remedy. It is the inadequacy, and not the absence, of other legal remedies, coupled with the danger of a failure of justice, which determines the propriety of the relief by mandamus."

It is claimed that the commissioner of public safety should have been made a party to this proceeding; that it is not the duty of the mayor to personally enforce the penal statutes, but that such duty is a matter directly within the jurisdiction of the commissioner. I do not think that the commissioner is either

a proper or necessary party to this proceeding. It does not appear that he has refused to act in the premises. True he has not acted but his non-action is directly traceable to the mayor who has assumed to take command of the situation. In effect the mayor has given his subordinates to understand that it is not their duty to act and that he as the chief executive officer of the city on advice of counsel has officially determined that the jitneys should be allowed to run. Non-action in the present case is directly traceable to the mayor who has assumed full authority and responsibility to, in effect, prohibit his commissioner of public safety and the police department from enforcing the law in question. Of course, he has not done this in so many words but such is the necessary effect of his action.

Under the peculiar provisions of the Second Class Cities Law direct responsibility for the enforcement of the laws of the state is in the mayor. It is his duty to see that the city officers and departments faithfully perform their duty; to maintain peace and good order within the city and to take care that the laws of the state are enforced within the city. § 54.

The commissioner of public safety has the supervision, control and direction of the police department. § 131. It is his duty to make all reasonable orders reasonably necessary to effect a prompt and efficient performance of all the duties imposed upon him and his department. It is the duty of the chief of police to enforce the rules and regulations of the commissioner. § 141. The police have the power and it is their duty to arrest any person found by them violating any of the laws of the state. § 142.

There is a whole train of officials from the mayor to the police officers, each responsible in his turn to his superior.

Supreme Court, April, 1921.        [Vol. 115.

The non-action of the police, the chief of police and the commissioner of public safety in the present case is directly traceable to the non-action of the mayor, who has assumed command of the situation. Their non-action is in effect his non-action.

In the case of *Goodell* v. *Woodbury, supra,* a motion was made to quash the petition because of the non-joinder of the solicitor of the county as a defendant. The court held that the motion was properly denied, saying:

" The fact that it is the duty of the solicitor to prosecute all offenses against chapter 112 does not impair or affect the obligation of the defendant to also enforce the provisions of that chapter. If the solicitor has neglected his duty, the defendant is not relieved from the legal consequences of his own neglect. 'A mandamus will not be refused merely because the desired relief may be obtained by applying to another officer.'

" But furthermore the bill of exceptions discloses no evidence that the solicitor has neglected or refused to prosecute offenses against chapter 112, or that he has in any way permitted their commission. So far as appears (and such is also the presumption), he has not violated his duty, and therefore should not be subjected to the imputation of wrongdoing which would attach to him as a defendant."

In that same case the defendant was required by law to " carry into execution within the city the laws of the state and all ordinances of the city."

The court said: " The obligation thus imposed on him to enforce the laws of the state within the city is both peremptory and plainly defined, and, having ' willfully and intentionally ' refused to perform it, he cannot be permitted to set up successfully in bar of the plaintiffs' petition the defense of nonperformance

through the exercise of the discretion with which to some extent he is necessarily clothed, but which nevertheless he cannot purposely and deliberately abuse, or exercise in an arbitrary or capricious manner, or so as to effect a failure of justice. (Citing authorities.) On the contrary, when, as here, the facts show a gross abuse of discretion, and a willful evasion of positive duty, scores of authorities hold that mandamus will lie (citing authorities); and it would be a reproach upon the administration of justice if the law were otherwise.''

In the case of *State ex rel. Lay* v. *City of Hoboken,* 75 N. J. L. 315, it was held that mandamus requiring a municipal board to order that the entire interior of bars or business-rooms in the city in which intoxicating liquors are sold, should be, on Sunday, open to full view from the public streets of said city, as required by state law, may issue upon application of a private relator, who is a resident and taxpayer of the municipal district. The court said that the duty thus pointed out by statute is a ministerial one, clearly mandatory, and that mandamus is the proper remedy to enforce performance by public boards of such duties. It was also held that mandamus would not be denied on the ground that there was a remedy by indictment. The court said that indictment would not furnish a complete remedy; that while it might be the means of punishing the delinquent members, it would leave the public duty still unperformed, and that to justify the refusal of the writ on that ground, the other remedy must be specific and adequate.

In the case of *People ex rel. Brown* v. *Kennedy,* 102 Misc. Rep. 450, Justice Chester granted a peremptory writ of mandamus in a case where it appeared that practically all of the saloons in Cohoes were openly

and notoriously violating the provisions of the Liquor Tax Law with respect to obstructions in their windows and that many of them were violating the provisions of said statute relating to obstructions which prevented a full view of the entire room.

A writ was granted to compel the commissioner of public safety, the chief of police and his subordinates to enforce or cause to be enforced all of the provisions of the Liquor Tax Law.

The court said that it was the duty of the commissioner to see and know that his orders were executed and that his subordinates faithfully performed the duties incumbent upon them. The court said: " If the violation alleged was one concerning an isolated case the attitude of the respondents could be looked upon with some degree of consideration, but when such violations are well nigh universal and general throughout the city, as appears by the detailed proof contained in the petition, it may fairly be assumed that notwithstanding the orders alleged by the respondents to have been given by them they do not intend to enforce the law by any measures which are effective."

A similar situation arose in *Matter of Whitney*, 3 N. Y. Supp. 838; 24 N. Y. St. Repr. 968, where it was held that a writ of mandamus requiring the police commissioners to enforce the provisions of the Excise Law, could be applied for by any citizen taking an interest in the observance and enforcement of that law. The statute in that case provided that it should be the duty of every sheriff, constable, policeman and officer of police, to enforce the observance of that law. The writ was denied in that case, but simply upon the ground that it had not been shown that the police commissioners did not intend to secure the observance of the law.

. In the case at bar the mayor has openly and publicly announced his positive refusal to act in the performance of the duty laid upon him by section 54 of the Second Class Cities Law.

There is no other adequate remedy.   To refuse to grant this writ of mandamus would be to effect a failure of justice.

A writ of mandamus may issue commanding the respondent to maintain peace and good order within the city of Albany and to take care that the laws of the state are enforced within the said city by directing the commissioner of public safety to enforce by action of the police department of said city, the provisions of section 26 of the Transportation Corporations Law of the state.

The application is granted, without costs.