PEOPLE ex rel. JOHN C. JUDGE, Relator, *v.* JOHN F. HYLAN, as Mayor of City of New York, Defendant.

(Supreme Court, Kings Special Term for Motions, August, 1921.)

Mandamus — automobile stage line — lack of consent of local authorities — when mayor will be compelled to enforce the law — Transportation Corporations Law, § 26 — Greater New York Charter, § 115.

> Where for some time a bus line has been and is being operated within the city of New York without the consent of the local authorities, mandamus lies to compel the mayor to discharge the ministerial duty imposed upon him by section 115 of the Greater New York Charter to enforce the provisions of section 26 of the Transportation Corporations Law.

APPLICATION for writ of mandamus.

John C. Judge, relator, in person.

John P. O'Brien, corporation counsel (Charles J. Nehrbas, assistant corporation counsel), in opposition.

CROPSEY, J.  The relator as a citizen and taxpayer seeks to mandamus the mayor to enforce the provisions of section 26 of the Transportation Corporations Law.  That section in substance provides that no bus or motor vehicle line or route shall be operated without the consent of the local authorities of the city as defined by the Railroad Law, granted upon such

terms as may be imposed.  A bus line is being oper-
ated in Rockaway Park, Queens borough, and has been
there operated for some time.  It has not received the
consent required by the statute.  And the mayor
although his attention was called to the operation has
permitted it to continue and has failed to enforce the
law.  This proceeding is to compel him to perform his
duty — for it is the duty of the mayor " To be vigilant
and active in causing the ordinances of the city, and
laws of the state to be executed and enforced, * * *."
Greater N. Y. Charter, § 115.

There is no answer or denial of the mayor in the
papers.  Hence all the allegations in the petition must
be accepted as established facts.  The petitioner sets
forth that the operators of the buses claim they are
doing so under a " sight seeing car " license, but
asserts the fact to be that no such license is in exist-
ence.  These further facts appear, that the buses are
a menace to the public, making travel on the streets
dangerous, that they damage the streets, and cause
expense to the taxpayers, but pay nothing into the
public treasury for the privilege they exercise, and
furnish no security to compensate for damages they
may occasion.

There is an affidavit from a man who says he is the
president of the company which is operating the buses.
But this cannot take the place of an answer by the
mayor, who is the sole defendant in this proceeding,
and if it could it would serve no purpose.  It contains
no denials.  It says " the company owns but four
omnibuses."  The petition states that eight or ten are
" operated."  This is not denied.  The company may
" own " only four and yet " operate " any number.
And suspicion necessarily attaches to every statement
in this affidavit because in another part the attempt

plainly is made to deceive the court. It says " the company has complied with the state law as to the registration of omnibuses and of the ordinances of the city of New York as to the licensing of sight seeing cars." And attached to the affidavit are two licenses for such cars. But these licenses were not issued until after this action was started and after the mayor had obtained upon his request an adjournment of the hearing of this application for a mandamus. And then they were issued by the mayor's appointee, the commissioner of licenses. The allegations in the motion papers show that such a license had been issued last year but that it expired in February of this year and that since then and until after this action was commenced no such license was in existence. The corporation counsel in presenting the mayor's case stated to the court that the buses were being operated under such licenses and reiterated the statement when his attention was especially called to the claim of the relator, that no such licenses were in existence. The corporation counsel did not state that the licenses had been issued only after the action was begun. The court did think it had the right to believe that the chief law officer of the city would not misrepresent conditions.

These buses were being operated not only without right, but without even the semblance or pretense of right and in violation of law. This the mayor knew, and yet he permitted them to continue. His reason or motive is immaterial. The papers do not show what it is. But there can be none that will excuse his failure to do his duty — especially when his attention has been called to the conditions.

But if the licenses mentioned had been issued and were in existence at all times, the operation of the

28

buses would not have been legalized. There is warrant for licensing " sight seeing cars," which by the ordinances are defined as motor driven vehicles " designed to carry seven or more persons from a fixed locality to points of interest about the city." These, however, were not such vehicles. They did not carry " sight seers," nor did they operate to " points of interest." They furnished transportation for those who cared to patronize them between their homes and the railway station. They traversed the same streets on each trip, each day. Many of their riders used the buses daily — to and from their work. Special rates were given those who bought a monthly ticket. These " sight seeing " buses began their trips at six o'clock in the morning and continued them until midnight and later. It is a sorry spectacle to see city officials engaged in such an attempt to hoodwink — first violating the law wilfully and deliberately and then trying to cover it up. These buses are common carriers operating without right and at the expense of the taxpayers. Whether this is permitted as relator suggests because of the activities of a public official whose position gives him no jurisdiction over the matter is not established. But it is of no matter here.

That a mandamus must issue under the facts appearing is settled. *People ex rel. Weatherwax* v. *Watt,* 115 Misc. Rep. 120; affd., 197 App. Div. 929. The duties of the mayor here (Charter, § 115) are practically identical with those of the mayor in the cited case. Second Class Cities Law, § 54. That the mayor of New York is a magistrate (Charter, § 116) makes no difference. His duty to enforce the laws is ministerial (case cited), not judicial. Motion granted, with fifty dollars costs.

Motion granted.